[Cite as *In re L.L.S.*, 2017-Ohio-7450.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| IN RE: L.L.S. | : | **O P I N I O N** |
| | : | |
| | | **CASE NO. 2016-P-0068** |
| | : | |
| | : | |
| | : | |

Appeal from the Portage County Court of Common Pleas, Juvenile Division, Case No. 2015 JCC 00234.

Judgment: Affirmed.

*Thomas Grist,* 925 Creekview Drive, Aurora, OH 44202 (For Appellant, Tiffany L. Spencer, Mother).

*Victor V. Vigluicci,* Portage County Prosecutor, and *Brandon J. Wheeler*, Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Appellee, Portage County Department of Job and Family Services).

*Richard C. Lombardi,* 240 South Chestnut Street, Suite B, Ravenna, OH 44266 (Guardian ad litem).

CYNTHIA WESTCOTT RICE, P.J.

{¶1} Appellant, Tiffany L. Spencer ("Mother"), appeals from the September 29, 2016 judgment of the Portage County Court of Common Pleas, Juvenile Division, ordering that her child, L.L.S., be placed in the legal custody of Kevin and Lora Labbe ("the Labbes"). Finding no reversible error, we affirm.

{¶2}   Mother is the biological mother of L.L.S., d.o.b. March 21, 2005, and L.M.L., d.o.b. March 7, 2007 (collectively "minor children").[1]  This appeal, Case No. 2016-P-0068, involves L.L.S.  Mother's companion appeal, Case No. 2016-P-0069, involves L.M.L.  Mother's arguments in both appeals are the same.  The biological father of the minor children is Ronald Lemin ("Father").  Father is not a named party in either appeal.

{¶3}   On March 24, 2015, the minor children were removed from Mother's care, custody, and control after the Portage County Drug Task Force found a methamphetamine lab in the garage of their residence.[2]  The next day, appellee, Portage County Department of Job and Family Services ("PCDJFS"), filed complaints alleging that the minor children were abused, neglected, and dependent.[3]

{¶4}   Attorney Richard C. Lombardi ("GAL") was appointed as guardian ad litem and attorney for the minor children.  The juvenile court also appointed separate counsel for Mother.

{¶5}   A shelter care hearing was subsequently held.  The minor children were placed in the interim pre-dispositional custody of PCDJFS.  On May 14, 2015, the minor children were found to be dependent.

---

1. Mother also has other children with other fathers, D.A.G., d.o.b. January 4, 2011, and N.L.W., d.o.b. June 18, 2015.  However, this appeal does not involve D.A.G. or N.L.W.

2. Mother and the minor children resided with Derek Warner (Mother's boyfriend), who had 14 pending charges including possession of chemicals/manufacture drugs, possession of drugs (methamphetamine), and possession of drugs (marijuana), as well as a pending theft charge.  Mr. Warner was also found guilty of trafficking in drugs in 2005.  Regarding the charges in the instant matter, Mr. Warner was sentenced to prison.

3. Amended complaints were filed on April 13, 2015.

{¶6} A dispositional hearing was held on June 16, 2015. A case plan was agreed to and adopted. The minor children were placed in the temporary custody of PCDJFS.

{¶7} In September 2015, Mother and Father filed motions for legal custody. However, both Mother and Father withdrew those motions later that year.

{¶8} On December 14, 2015, the GAL filed a report indicating the following: he met with the parties at various times; he met and interviewed the minor children; he met and interviewed the maternal grandmother; he met, interviewed, and inspected the home of Mark and Brenda Wakefield ("the Wakefields"), the minor children's maternal uncle and aunt; he spoke with psychologists and counselors and reviewed reports; he met with Mother and Father; he attended Family Team Meetings; he interviewed the Labbes, who are good family friends with Mother and have a very good relationship with the minor children, who have stayed at their home frequently and are a potential placement for L.L.S.; and recommended granting legal custody of L.M.L. to the Wakefields.

{¶9} In addition, a December 14, 2015 case review reveals Mother scored an "8" on the risk re-assessment scale of abuse/neglect regarding her parenting of the minor children, i.e., an actual risk level of "high."

{¶10} Following a monthly home visit by the caseworker and GAL, on March 2, 2016, PCDJFS filed a motion for adoption of permanency plan, to grant legal custody of L.L.S. to the Labbes (non-relatives) and L.M.L. to the Wakefields (relatives). As Mother was not in agreement with the plan, she filed another motion for legal custody on March 10, 2016. A week later, PCDJFS filed a motion for change of custody (regarding L.L.S.

from the temporary custody of PCDJFS to the legal custody of the Labbes) and to terminate the case. The Wakefields filed a motion for legal custody of L.M.L.

{¶11} On March 18, 2016, a semiannual administrative review was filed. That review revealed the following: Mother was not consistent with counseling; Mother and Father lack financial support for the minor children; Mother and Father have placed the minor children in unsafe situations and circumstances; Mother continues to make poor choices for herself and for the minor children; the minor children have been exposed to unsafe, unstable, and harmful environments; the minor children were directly exposed to being in the presence of a documented unsafe individual (Mother's boyfriend); and Mother lacks stable housing and has moved three times since the minor children were removed.

{¶12} On May 12, 2016, the GAL filed a report indicating the following: Mother was reported, and did not deny, to be purchasing large amounts of Sudafed, a key component of manufacturing methamphetamine; Mother had been charged shortly before the raid at issue for obstructing official business and complicity to commit theft; the family residence was in disarray; the minor children were upset and crying; clothes and mattresses were scattered all over the floor; Mother continues to deny there was a meth lab in their garage; since Mother's oldest child was born in 2005, Mother had moved approximately 20 times; and Mother's last residence is a "dump" filled with the stench of dog manure. The GAL recommended that it is in the minor children's best interest to be placed into the legal custody of their respective placements with L.M.L. remaining with the Wakefields and L.L.S. remaining with the Labbes.

{¶13} A change of custody hearing was held on May 17, 2016. Prior to the start of the hearing, Mother, who was represented by counsel, requested that the court appoint separate counsel for the minor children. The GAL advised the court he did not believe that a conflict existed in his dual roles. The court agreed and denied Mother's oral motion.

{¶14} At the hearing, testimony was taken from the following: Alexandria Bevere, a social worker with PCDJFS; Mother; the Wakefields; and Lora Labbe. Under Mother's care, the minor children had hygiene issues, had behavioral problems, and performed poorly in school. After L.M.L.'s placement with the Wakefields and L.L.S.'s placement with the Labbes, the minor children no longer have hygiene issues; their behavioral problems were rectified; their skills have dramatically increased; they receive good grades in school; and are now involved in extracurricular activities. Since the removal of the minor children from Mother's care, both children have thrived personally, socially, and academically. Both the Wakefields and the Labbes provide the minor children with stable, consistent, and nurturing environments. The minor children have bonded with their respective custodians. The Wakefields and the Labbes are open to Mother improving her relationship with the minor children and support Mother's recovery efforts. L.M.L. advised the GAL she wants to reside with the Wakefields. L.L.S. has told the GAL she wants to reside with Mother or the Labbes. L.L.S. made statements about wanting to live with Mother because she was scared of hurting Mother's feelings.

{¶15} In his May 20, 2016 decision, the magistrate recommended granting legal custody of L.L.S. to the Labbes and L.M.L. to the Wakefields.[4]  Mother filed objections to the magistrate's decision on June 2, 2016.  PCDJFS filed responses.

{¶16} Following a hearing, on September 29, 2016, the juvenile court overruled Mother's objections and adopted the magistrate's decision.  The court ordered that it is in the minor children's best interest for L.L.S. to be placed in the legal custody of the Labbes and for L.M.L. to be placed in the legal custody of the Wakefields.  Mother filed timely appeals and raises the following two assignments of error:[5]

{¶17} "[1.] The Trial Court erred, and abused its discretion, when it affirmed the Magistrate's Decision to award legal custody of minor children L.L.S. and L.M.L. to parties other than Appellant.

{¶18} "[2.] The Trial Court abused its discretion in not granting Appellant's motion to appoint new counsel for the minor child L.L.S."

{¶19} In her first assignment of error, Mother argues the juvenile court abused its discretion in adopting the magistrate's decision and awarding legal custody of L.L.S. to the Labbes and L.M.L. to the Wakefields.  Although this appeal only involves L.L.S., this court will address and provide a merit analysis as to both children in this opinion.

{¶20} "In reviewing a trial court's decision to adopt or reject a magistrate's decision, an appellate court looks for abuse of discretion.  *Hayes v. Hayes,* 11th Dist. No. 2005-L-138, 2006-Ohio-6538, at ¶10." *In re Wiley,* 11th Dist. Portage No. 2008-P-0062, 2009-Ohio-290, ¶20.  "'A juvenile court's grant of legal custody is [also] reviewed

4. A tunc pro tunc magistrate's decision was filed on June 23, 2016, regarding minor wording in a stipulation concerning Father.  Father had stipulated to the juvenile court granting PCDJFS' motions.

5. As stated, this appeal, Case No. 2016-P-0068, involves L.L.S.  Mother's companion appeal, Case No. 2016-P-0069, involves L.M.L.  Mother's arguments in both appeals are the same.

6

under an abuse of discretion standard.' *In re Yates,* 11th Dist. No. 2008-G-2836, 2008-Ohio-6775, at ¶32 (citations omitted); *In re Nice,* 141 Ohio App.3d 445, 455[.]" *In re J.F.,* 11th Dist. Trumbull No. 2010-T-0029, 2011-Ohio-3295, ¶33.   Regarding this standard, we recall the term "abuse of discretion" is one of art, connoting judgment exercised by a court which neither comports with reason, nor the record.  *State v. Ferranto,* 112 Ohio St. 667, 676-678 (1925).  An abuse of discretion may be found when the trial court "applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact." *Thomas v. Cleveland,* 176 Ohio App.3d 401, 2008-Ohio-1720, ¶15 (8th Dist.)

{¶21} The Ohio Supreme Court has recognized that "parents who are suitable persons have a 'paramount' right to the custody of their minor children."  *In re Murray* (1990), 52 Ohio St.3d 155, 157 (citations omitted).  However, "(a) juvenile court adjudication of abuse, neglect, or dependency is a determination about the care and condition of a child and implicitly involves a determination of the unsuitability of the child's custodial and/or noncustodial parents."  *In re C.R.,* 108 Ohio St.3d 369, 2006-Ohio-1191, paragraph two of the syllabus.  Accordingly, "the *fundamental* or *primary* inquiry at the dispositional phase of * * * juvenile proceedings is not whether the parents of a previously adjudicated 'dependent' child are either fit or unfit," rather, it is 'the best interests and welfare of the child (that) are of paramount importance.'  *In re Cunningham* (1979), 59 Ohio St.2d 100, 106 (emphasis sic); *In re D.A.,* 113 Ohio St.3d 88, 2007-Ohio-1105, at ¶11 ("(o)nce the case reaches the disposition phase, the best interest of the child controls").

{¶22} Moreover, the applicable standard for granting legal custody at the dispositional phase of the proceedings is preponderance of the evidence, rather than the heightened standard of clear and convincing evidence * * *.  *Nice,* 141 Ohio App.3d at 455; *In re Willmann* (1986), 24 Ohio App.3d 191, paragraph one of the syllabus; cf. *In re Perales* (1977), 52 Ohio St.2d 89, 98 ("parents may be denied custody only if a preponderance of the evidence indicates * * * that an award of custody would be detrimental to the child"). *In re J.F., supra,* at ¶39-40.

7

{¶23} In this case, Mother points out that during the pendency of the matters involving the minor children and D.A.G., she gave birth to another child, N.L.W. Mother stresses it defies common sense that the minor children were removed from her care since N.L.W., her newborn, was not. Mother also stresses she complied with the case plan. As such, it is Mother's position that the juvenile court abused its discretion in granting legal custody of the minor children to third parties.

{¶24} Mother argues that because N.L.W. was in her care, then she is fit for custody of the minor children. However, the Ohio Supreme Court has held that the primary factor of paramount importance in dependency/custody matters is the best interests of the child, not the fitness of the parent. *In re Cunningham, supra,* at 106; *In re D.A., supra,* at ¶11. The best interests of the minor children are a separate matter from the best interest of another, newborn, child.

{¶25} As stated, the minor children were removed from Mother's care, custody, and control after the Portage County Drug Task Force found a methamphetamine lab in the garage of their residence. Mother was pregnant with N.L.W. during that time. A December 2015 case review reveals Mother scored an "8" on the risk re-assessment scale of abuse/neglect regarding her parenting of the minor children, i.e., an actual risk level of "high."

{¶26} A March 2016 semiannual administrative review revealed the following: Mother was not consistent with counseling; Mother and Father lack financial support for the minor children; Mother and Father have placed the minor children in unsafe situations and circumstances; Mother continues to make poor choices for herself and for the minor children; the minor children have been exposed to unsafe, unstable, and

harmful environments; the minor children were directly exposed to being in the presence of a documented unsafe individual (Mother's boyfriend); and Mother lacks stable housing and has moved three times since the minor children were removed.

{¶27} A May 2016 GAL report indicated the following: Mother was reported, and did not deny, to be purchasing large amounts of Sudafed, a key component of manufacturing methamphetamine; Mother had been charged shortly before the raid at issue for obstructing official business and complicity to commit theft; the family residence was in disarray; the minor children were upset and crying; clothes and mattresses were scattered all over the floor; Mother continues to deny there was a meth lab in their garage; since Mother's oldest child was born in 2005, Mother had moved approximately 20 times; and Mother's last residence is a "dump" filled with the stench of dog manure.

{¶28} At the May 2016 change of custody hearing, the following testimony was revealed: under Mother's care, the minor children had hygiene issues, behavioral problems, and performed poorly in school; after L.M.L.'s placement with the Wakefields and L.L.S.'s placement with the Labbes, the minor children no longer have hygiene issues, their behavioral problems were rectified, their skills have dramatically increased, they receive good grades in school, and are now involved in extracurricular activities; since the removal of the minor children from Mother's care, both children have thrived personally, socially, and academically; both the Wakefields and the Labbes provide the minor children with stable, consistent, and nurturing environments; the minor children have bonded with their respective custodians; and the Wakefields and the Labbes are

open to Mother improving her relationship with the minor children and support Mother's recovery efforts.

{¶29} L.M.L. advised the GAL that she wants to reside with the Wakefields. L.L.S. told the GAL she wants to reside with Mother or the Labbes. However, L.L.S. made an occasional expression about wanting to live with Mother because she was scared of hurting Mother's feelings. L.L.S., in fact, repeatedly stated a desire to live with the Labbes.

{¶30} The GAL recommended that it is in the minor children's best interest to be placed into the legal custody of their respective placements with L.M.L. remaining with the Wakefields and L.L.S. remaining with the Labbes. Based on the facts presented, the juvenile court properly relied upon witness testimony and the GAL's reports and recommendations.

{¶31} Mother argues that because she completed the case plan objectives, legal custody of the minor children should not have been granted to third parties. This court, in a permanent custody/termination of parental rights case which consists of a higher burden of persuasion, previously addressed the question of whether a biological parent who has completed case plan objectives should be given preference over a non-parent. *In re J.H.*, 11th Dist. Lake No. 2012-L-126, 2013-Ohio-1293. This court answered that question in the negative by stating the following:

> {¶32} While the parents' progress is measured in part by their completion of the case plan goals, the case plan is not the only measure by which a court determines whether to grant a motion for permanent custody. Substantial compliance with a case plan, without more, does *not* entitle a parent to custody. *In re Calvert Children,* 9th Dist. Nos. 05-CA-19, 05-CA-20, 2005-Ohio-5653, ¶74. The main issue considered by the courts is not whether the parent has substantially complied with the case plan, but, rather, *whether the*

10

*parent has substantially remedied the conditions that caused the child's removal. Calvert, supra; In re Palladino,* 11th Dist. [Geauga] No. 2002-G-2445, 2002-Ohio-5606, ¶16. Since the trial court is required to assess the best interests of the child when determining whether to grant a motion for permanent custody, "it is entirely possible that a parent could complete all of his/her case plan goals and the trial court still appropriately terminate his/her parental rights." *Calvert, supra.* (Emphasis sic.) *In re J.H., supra,* at ¶103.

{¶33} Upon review and as addressed, the juvenile court did not abuse its discretion in adopting the magistrate's decision and awarding legal custody of L.L.S. to the Labbes and L.M.L. to the Wakefields.

{¶34} Mother's first assignment of error is without merit.

{¶35} In her second assignment of error, Mother contends the juvenile court abused its discretion in not granting her oral motion to appoint new, separate counsel for L.L.S. at least, and perhaps for L.M.L. as well. As previously stated, although this appeal only involves L.L.S., this court will address and provide a merit analysis as to both children in this opinion.

{¶36} Pursuant to R.C. 2151.352, indigent children, parents, custodians, or other persons in loco parentis are entitled to appointed counsel in all juvenile proceedings. See *State ex rel. Asberry v. Payne* (1998), 82 Ohio St.3d 44, 48 * * *. "Generally, when an attorney is appointed as guardian *ad litem,* that attorney may also act as counsel for the child, absent a conflict of interest." *In re Janie M.* (1999), 131 Ohio App.3d 637, 639, * * *, citing R.C. 2151.281(H); *In re Smith* (1991), 77 Ohio App.3d 1, 14, * * *. 'The roles of guardian *ad litem* and attorney are different.' *In re Janie M.* at 639, * * *, citing *In re Baby Girl Baxter* (1985), 17 Ohio St.3d 229, 232 * * *. "Therefore, absent an express dual appointment, courts should not presume a dual appointment when the appointed guardian *ad litem* is also an attorney." *In re Janie M.* at 639, * * *, citing *In re Duncan/Walker Children* (1996), 109 Ohio App.3d 841, 844-845 * * *; *In re Kenneth R.* (Dec. 4, 1998), 6th Dist. No. L-97-1435, 1988 WL 833569. (Emphasis sic.) (Parallel citations omitted.) *In re T.L.M., T.S.M., A.L.M.,* 11th Dist. Portage Nos. 2010-P-0008, 2010-P-0009, and 2010-P-0010, 2010-Ohio-3553, ¶45.

**{¶37}** R.C. 2151.281(H), "Guardian ad litem," states in part:

**{¶38}** (H) If the guardian ad litem for an alleged or adjudicated abused, neglected, or dependent child is an attorney admitted to the practice of law in this state, the guardian ad litem also may serve as counsel to the ward. Until the supreme court adopts rules regarding service as a guardian ad litem that regulate conflicts between a person's role as guardian ad litem and as counsel, if a person is serving as guardian ad litem and counsel for a child and *either that person or the court finds that a conflict may exist between the person's roles as guardian ad litem and as counsel, the court shall relieve the person of duties as guardian ad litem and appoint someone else as guardian ad litem for the child.* (Emphasis added.)

**{¶39}** Similarly, Juv.R. 4(C), "Assistance of counsel; guardian ad litem," provides in part:

**{¶40}** (C) Guardian ad Litem as Counsel.

**{¶41}** (1) When the guardian ad litem is an attorney admitted to practice in this state, the guardian may also serve as counsel to the ward providing no conflict between the roles exist.

**{¶42}** (2) If a person is serving as guardian ad litem and as attorney for a ward and *either that person or the court finds a conflict between the responsibilities of the role of attorney and that of guardian ad litem, the court shall appoint another person as guardian ad litem for the ward.* (Emphasis added.)

**{¶43}** In the instant matter, the record establishes that the GAL was specifically appointed as guardian ad litem and attorney for the minor children. Thus, a dual appointment existed and the minor children were with legal representation. Mother alleges that a conflict existed because L.L.S. expressed an interest in living with her. However, our review of the record reveals that no such conflict existed requiring the appointment of new counsel.

**{¶44}** The minor children's ages, circumstances, and statements do not reveal any conflict giving rise to any need for new, separate counsel. As stated, L.M.L.

12

advised the GAL that she wants to reside with the Wakefields. L.L.S. told the GAL she wants to reside with Mother or the Labbes. However, L.L.S. made an occasional expression about wanting to live with Mother because she was scared of hurting Mother's feelings. L.L.S., in fact, repeatedly stated a desire to live with the Labbes.

{¶45} No conflict requiring the appointment of new, separate counsel for the minor children arose in this case. The plain language of R.C. 2151.281(H) and Juv.R. 4(C) is clear. The only parties capable of triggering a new appointment are the GAL or the court. Here, the GAL expressly stated he did not believe any conflict existed. The juvenile court also determined that no conflict existed. We also note that Mother requested new counsel for the minor children. However, *if* a conflict existed, the proper procedure is for the appointment of a new guardian ad litem, not new counsel. *See* R.C. 2151.281(H) and Juv.R. 4(C).

{¶46} In determining the best interest of the minor children, the juvenile court properly relied upon the GAL's reports and recommendations that L.L.S. be placed in the legal custody of the Labbes and that L.M.L. be placed in the legal custody of the Wakefields. Thus, the court did not err in denying Mother's oral request to appoint new, separate counsel for the minor children since the GAL had a dual appointment, the minor children were legally represented, and there was no conflict of interest. *See In re T.L.M., T.S.M., A.L.M., supra,* at ¶48; R.C. 2151.281(H); Juv.R. 4(C).

{¶47} Mother's second assignment of error is without merit.

{¶48} For the foregoing reasons, Mother's assignments of error are not well-taken. The judgment of the Portage County Court of Common Pleas, Juvenile Division, is affirmed.

13

DIANE V. GRENDELL, J., concurs,

COLLEEN M. O'TOOLE, J., dissents with a Dissenting Opinion.

_____

COLLEEN M. O'TOOLE, J., dissents with a Dissenting Opinion.

{¶49} I respectfully dissent.

{¶50} The majority finds the juvenile court did not abuse its discretion in denying Mother's oral motion to appoint new, independent counsel for L.L.S. and awarding legal custody of L.L.S. to the Labbes. For the reasons stated, I disagree.

{¶51} The term "abuse of discretion" is one of art, connoting judgment exercised by a court which neither comports with reason, nor the record. *State v. Ferranto*, 112 Ohio St. 667, 676-678 (1925). An abuse of discretion may be found when the trial court "applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact." *Thomas v. Cleveland*, 176 Ohio App.3d 401, 2008-Ohio-1720, ¶15 (8th Dist.)

{¶52} Following PCDJFS's complaints alleging that L.L.S., d.o.b. March 21, 2005, and L.M.L., d.o.b. March 7, 2007 (collectively "minor children"), were abused, neglected, and dependent, Attorney Richard C. Lombardi ("GAL") was appointed as guardian ad litem and attorney for the minor children.

{¶53} "While dual appointments are permitted in certain circumstances, the trial court must ensure that the appointed attorney's role as guardian ad litem does not conflict with her role as the children's attorney. *In re Williams,* 11th Dist. Nos. 2003-G-2498 & 2003-G-2499, 2003-Ohio-3550, at ¶20. (Citations omitted.) The Supreme

14

Court of Ohio has explained the potential conflict that may arise from a dual appointment: '(T)he duty of a guardian ad litem to a ward (to recommend to the court what the guardian feels is in the best interest of the ward) and the duty of a lawyer to a client (to provide zealous representation) may be in fundamental conflict in a dual-representation situation.' *In re Williams,* [101 Ohio St.3d 398], 2004-Ohio-1500, at ¶18, citing *In re Baby Girl Baxter* (1985), 17 Ohio St.3d 229, 232, * * *." (Parallel citations omitted.) *In re Allen,* 11th Dist. Trumbull No. 2008-T-0010, 2008-Ohio-3389, ¶14-15 (O'Toole, J., concurred with Concurring Opinion); *see also* Juv.R. 4(A) ("Every party shall have the right to be represented by counsel"); Juv.R. 2(Y) ("'Party' means a child who is the subject of a juvenile court proceeding"); R.C. 2151.352 ("A child * * * is entitled to representation by legal counsel at all stages of the proceedings * * *").

{¶54} The certain circumstances in which it has been found necessary to appoint independent counsel include instances where a conflict exists between the GAL's recommendation and the child's wishes. *In re Qu.W.*, 11th Dist. Ashtabula No. 2015-A-0016, 2015-Ohio-2202, ¶61, citing *In re Williams*, 2003-Ohio-3550, ¶18. The appointment of independent counsel is generally warranted in matters when a minor child expresses a desire to remain or be reunited with his or her parent but the GAL believes otherwise. *Id.*, quoting *In re Hilyard*, 4th Dist. Vinton Nos. 05CA600 and 05CA609, 2006-Ohio-1965, ¶36. *Accord Williams, supra,* at ¶7.

{¶55} On May 12, 2016, the GAL filed a report recommending that it is in the minor children's best interest for L.M.L. to be placed into the legal custody of the Wakefields and L.L.S. to be placed into the legal custody of the Labbes.

15

{¶56} A change of custody hearing was held on May 17, 2016. Prior to the start of the hearing, Mother, who was represented by counsel, requested that the court appoint separate counsel for the minor children. The GAL advised the court he did not believe that a conflict existed in his dual roles. The court agreed and denied Mother's oral motion. However, the record establishes that the dual appointment became improper due to the conflict between the GAL's recommendations regarding L.L.S. and L.L.S.'s expressed wishes.

{¶57} At the hearing, testimony was taken from the following: Alexandria Bevere, a social worker with PCDJFS; Mother; the Wakefields; and Lora Labbe. It was revealed that L.M.L. advised the GAL she wants to reside with the Wakefields. However, L.L.S. told the GAL she wants to reside with Mother or the Labbes. The juvenile court did not inquire further or take 11-year-old L.L.S.'s testimony concerning the fact that a wish of hers was to live with Mother. Instead, on September 29, 2016, the juvenile court overruled Mother's objections and adopted the magistrate's decision. The court ordered that it is in the minor children's best interest for L.L.S. to be placed in the legal custody of the Labbes and for L.M.L. to be placed in the legal custody of the Wakefields.

{¶58} This writer points out that children were first permitted to provide courtroom testimony in 1895. *The Child Witness in the Courtroom*, Robert H. Pantell, Committee on Psychosocial Aspects of Child and Family Health, (March 2017), [http://pediatrics.aappublications.org.] Almost a century later, children have increasingly served as witnesses in criminal, civil, and family courts. *Id.* "The purpose of child testimony in court is to provide trustworthy evidence. The qualifications for a child to provide testimony include the following: sufficient intelligence, understanding, and ability

16

to observe, recall, and communicate events; an ability to comprehend the seriousness of an oath; and an appreciation of the necessity to tell the truth." *Id.* at *3-4.

**{¶59}** The determination of competency is within the sound discretion of the trial judge. *See State v. Frazier*, 61 Ohio St.3d 247, 252 (1991). The record reveals that 11-year-old L.L.S. was competent and mature to testify. *See* R.C. 2317.01 ("All persons are competent witnesses except those of unsound mind and children under ten years of age who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly.") "This court has held that there is "'no bright-line rule (* * *) regarding what age a child would be considered mature for purposes (of appointment) of legal counsel.'" *In re Williams,* [*supra*], at ¶22." *In re Allen, supra,* at ¶13. "Further, * * * the Tenth Appellate District has held that a five-year-old child 'was arguably capable of expressing his wishes.' *In re T.V.,* 10th Dist. Nos. 04AP-1159 & 04AP-1160, 2005-Ohio-4280, at ¶59." *Id*; *see also In re Matsko*, 11th Dist. Lake Nos. 2006-L-230 and 2006-L-231, 2007-Ohio-2060 (Social worker's hearsay testimony concerning statements that child made during conversation with social worker was inadmissible in dependency action as child was ten years old at time of trial and should have been available as a declarant).

**{¶60}** Because the dual appointment became improper in this case following the conflict between the GAL's recommendations regarding L.L.S. and L.L.S.'s wishes, in which L.L.S. should have had a voice in these proceedings, I disagree with the majority's affirmation of the juvenile court's judgment.

**{¶61}** I respectfully dissent.

17