[Cite as *Auto Site v. Matthews*, 2017-Ohio-8441.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| AUTO SITE, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2017-P-0019** |
| MYKA VANAE MATTHEWS, | : | |
| Defendant-Appellant. | : | |

Civil Appeal from the Portage County Municipal Court, Ravenna Division, Case No. 2016 CVF 1695R.

Judgment: Affirmed.

*Aaron A. Schwartz,* 409 South Prospect Street, Ravenna, OH 44266 (For Plaintiff-Appellee).

*Myka Vanae Matthews,* pro se, 1284 Rowe Street, Akron, OH 44306 (Defendant-Appellant).

DIANE V. GRENDELL, J.

{¶1} Defendant-appellant, Myka Vanae Matthews, appeals the judgment of the Ravenna Municipal Court, in favor of plaintiff-appellee, Auto Site, in the amount of $10,102. The issues before this court are whether the repossession of collateral in a secured transaction based on claims of fraud in the application for credit ipso facto terminates a sales agreement despite the secured party's willingness to continue the contract and whether a secured creditor forfeits his right to a deficiency judgment for failing to demonstrate compliance with the notice statutes before disposing of the

collateral where the debtor has not put compliance in issue. For the following reasons, we affirm the decision of the court below.

{¶2} On June 21, 2016, Auto Site filed a Complaint in Ravenna Municipal Court against Matthews for breach of a sales contract. The case was tried before a magistrate.

{¶3} On March 27, 2017, the magistrate issued his Decision, which the municipal court adopted on the same day. Matthews filed Objections to the Magistrate's Findings which the court overruled as untimely.

{¶4} On June 19, 2017, the municipal court issued an Order and Judgment Entry in which the following findings and conclusions were made:

> 1. Plaintiff and Defendant entered into an agreement for Defendant to purchase a 2006 BMW 750L[i] * * *;
>
> 2. The parties['] agreement was signed September 12, 2015;
>
> 3. The purchase price of the vehicle was $11,990; Defendant paid $2,000 at the outset of the agreement; Plaintiff charged $100 for preparing documents leaving a total of $10[,]090 with a contract interest rate of 18%;
>
> 4. The contract called for thirty-six (36) payments of $364.78 due on the 12th of each month beginning November 12th, 2015;
>
> 5. The contract called for the payment of sales tax with two payments; the tax payments were to be made on September 26, 2015 and October 10, 2015;
>
> 6. The two (2) tax payments were not paid as scheduled; the first tax payment was made on October 19, 2015[,] and the second tax payment was made with a loan payment on November 5, 2015;
>
> 7. A payment of $300 was made by Defendant on December 22, 2015;
>
> 8. Plaintiff repossessed the vehicle on December 30, 2015;

9.     Defendant regained possession of the vehicle by paying Plaintiff $930 on January 12, 2016; $500 of the payment was the repossession fee, $364.78 related to a regular monthly payment, and the balance of $65.22 attributable to the approximate balance of the December 22nd[,] 2015 payment (due on December 12th);

10.     Approximately January 23, 2016[,] a representative contacted Defendant indicating she needed GAP insurance; (in relatively common parlance "GAP" is intended as an acronym for "guaranteed auto protection" or "guaranteed asset protection" and is frequently required by lenders when a loan exceeds the value of the car");

11.     On January 23, 2016[,] Defendant told Plaintiff to come pick up the car;

12.     Defendant remained in possession of the vehicle until April 25, 2016; while in Defendant's possession, the vehicle sustained substantial damage; the damage occurred February 16 or 17 of 2016;

13.     Plaintiff repaired the vehicle and sent Defendant a letter indicating a total balance due of $14,977; Plaintiff sought the aforementioned amount based on a contract balance of $10,617, plus repossession fee of $500 and costs to prepare for auction of $3,860;

14.     Plaintiff's Exhibit "H" showed proceeds to Plaintiff from the sale of the vehicle of $4,875;

15.     Plaintiff is entitled to damages of $10,102 determined by reducing the total amount owed of $14,977 by the amount received from the auction of $4,875.

{¶5}     On appeal, Matthews raises the following assignments of error:

{¶6}     "[1.] The trial court committed error by granting the Plaintiff $10,102 plus cost and interest at the contract rate of 10% per annum on a contract that was terminated as of December 30th, 2015 by the Plaintiff for 'false misrepresentation' on the application used to enter the contract signed on September 12th, 2015."

{¶7} "[2.] The trial court committed prejudicial error in granting Plaintiff's-appellees' [sic] motion for summary judgment, finding that the facts do not support a commercially reasonable manner of disposition of the automobile R.C[.] 1309.610. Defendant testified that Plaintiff did not notify her of the action."

{¶8} "A magistrate's decision is not effective unless adopted by the court." Civ.R. 53(D)(4)(a). "If no timely objections are filed, the court may adopt a magistrate's decision, unless it determines that there is an error of law or other defect evident on the face of the magistrate's decision." Civ.R. 53(D)(4)(c).

{¶9} The standard of review generally applied to a trial court's adoption of a magistrate's decision is abuse of discretion. *In re L.L.S.*, 11th Dist. Portage No. 2016-P-0068, 2017-Ohio-7450, ¶ 20 (cases cited).

{¶10} Where the appellant has failed to file timely objections to the magistrate's decision, however, the appellate court's review is more limited. The failure to file objections to a magistrate's decision compromises the appellant's ability to challenge the trial court's factual findings and legal conclusions: "Except for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion * * * unless the party has objected to that finding or conclusion as required by Civ.R. 53(D)(3)(b)." Civ.R. 53(D)(3)(b)(iv). "In appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Goldfuss v. Davidson,* 79 Ohio St.3d 116, 679 N.E.2d 1099 (1997), syllabus.

4

{¶11} Essentially, we must determine whether the municipal court committed plain error in its determination that there were no errors of law or other defects evident on the face of the magistrate's decision.

{¶12} In her first assignment of error, Matthews contends the municipal court erred in awarding damages for breach of contract since there was no legally binding contract in effect. According to Matthews, Auto Site's decision to repossess the vehicle on December 30, 2015, "due to fraud or misrepresentation on the original application signed September 12, 2015," effectively terminated the contract thereby discharging all executory obligations under the agreement. Upon regaining possession of the vehicle on January 12, 2016, Matthews maintains she only signed a new customer application which act "does not qualify as acceptance to enter into a new contract." Appellant's brief at 4-5.

{¶13} Matthews' argument is unavailing. It is well-established in Ohio law that the right to rescind or cancel a contract procured by fraud is waivable. *Baltimore & Ohio RR. Co. v. Jolly Bros. & Co.*, 71 Ohio St. 92, 72 N.E. 888 (1904), paragraph two of the syllabus ("[a] party to an executory contract procured by false representations, who, after knowledge that the representations are false and fraudulent, performs, or, without necessity, completes performance, of the contract, and accepts payment according to its terms, thereby waives the fraud"); *English v. Natl. Cas. Co.*, 138 Ohio St. 166, 169, 34 N.E.2d 31 (1941) ("[a] party to a contract who, after discovery or knowledge of facts which would entitle him to rescind, treats the contract as a subsisting obligation and leads the other party to believe the contract is still in effect, waives his right to rescind").

**{¶14}** Here, Auto Site demonstrated its intention to waive the right to rescind by restoring possession of the vehicle to Matthews and receiving payment from her under the terms of the sales contract. Such waiver by Auto Site is expressly sanctioned by the sales contract: "Seller may waive any default before or after the same has been declared without impairing its right to declare a subsequent default hereunder, this right being a continuing one."

**{¶15}** Matthews also contests the award of damages on the grounds that Auto Site submitted an estimate of auto repairs[1] rather than "a receipt or an invoice showing that it was paid." The repair estimate coupled with the testimony of Davood Haghighi, Auto Site's owner, that such an amount was spent in order to make the car sellable is sufficient evidence to sustain the damage award. *Stevers v. McClure*, 6th Dist. Wood No. WD-04-078, 2005-Ohio-5032, ¶ 29 ("appellant fails to cite, and this court's research has failed to find, any caselaw in support of appellant's assertion that damages cannot be established with estimated costs for repairs and, instead, must be established with amounts actually spent on repairs").

**{¶16}** The first assignment of error is without merit.

**{¶17}** In the second assignment of error, Matthews argues that the auction of the vehicle was not conducted in a "commercially reasonable" manner as required by R.C. 1309.610(A) and/or R.C. 1317.16(B).

**{¶18}** A secured party may dispose of collateral after default "only as authorized" by R.C. 1317.16. R.C. 1317.16(A).

> At least ten days prior to sale the secured party shall send notification of the time and place of such sale and of the minimum

---

1. Only the claim for repairs in the amount of $3,500 by AJ's Auto & Accessories was evidenced by an estimate. Other damage claims were established by receipts.

6

price for which such collateral will be sold, together with a statement that the debtor may be held liable for any deficiency resulting from such sale, by certified mail, return receipt requested, to the debtor at the debtor's last address known to the secured party, and to any persons known by the secured party to have an interest in the collateral. In addition, the secured party shall cause to be published, at least ten days prior to the sale, a notice of such sale listing the items to be sold, in a newspaper of general circulation in the county where the sale is to be held.

R.C. 1317.16(B).

{¶19} "In an action arising from a transaction in which the amount of a deficiency or surplus is in issue, * * * [a] secured party is not required to prove compliance with [the notice provisions] of the Revised Code relating to * * * disposition * * * unless the debtor * * * places the secured party's compliance in issue." R.C. 1309.626(A).[2]

{¶20} In the present case, Matthew's Notice of Answer did not raise the issue of notice. At trial, she argued that she did not receive actual notice, but did not otherwise contest Auto Site's compliance with the notice statutes.[3] The magistrate made the following finding with respect to Auto Site's notice of sale of the collateral at auction: "Prior to auction Plaintiff sent Defendant a letter indicating a balance due of $14,977: A copy of said letter was admitted into evidence as Exhibit 'G'. Plaintiff's Exhibit 'G' also indicated the date and time as well as the location."

---

2. R.C. 1309.626(A) expressly refers to "sections 1309.601 to 1309.628 of the Revised Code." In turn, R.C. 1317.16(C) incorporates several of these sections by providing that "sections 1309.610, 1309.611, 1309.615, 1309.617, and 1309.624 of the Revised Code govern disposition of collateral by the secured party." Construing these provisions *in pari materia*, it must be concluded that R.C. 1309.626(A)'s requirement that the debtor raise the issue of the secured party's compliance with notice provisions before the secured party must prove compliance applies to requirements of R.C. 1317.16(B). *See DaimlerChrysler Servs. N. Am. v. Lennington*, 9th Dist. Wayne No. 05CA0055, 2006-Ohio-1546, ¶ 10; *Columbus Mtge., Inc. v. Morton*, 10th Dist. Franklin No. 06AP-723, 2007-Ohio-3057, ¶ 40 ("[c]ompliance with R.C. 1309.610 is a condition precedent to recovery of a deficiency judgment and a creditor's failure to comply with the statute's requirements is an absolute bar to the recovery of a deficiency judgment").
3. Failure to receive actual notice does not bear on the secured party's compliance with the notice statutes. *Ford Motor Credit Co. v. Potts*, 47 Ohio St.3d 97, 99, 548 N.E.2d 223 (1989) ("no statute or controlling case law specifies that the debtor must actually sign the notice, indicating actual receipt").

**{¶21}** While the magistrate's findings fail to demonstrate that Auto Site fully complied with R.C. 1317.16(B), Matthews did not put compliance in issue and, therefore, Auto Site was not required to prove compliance.

**{¶22}** The second assignment of error is without merit.

**{¶23}** For the foregoing reasons, the judgment of the Ravenna Municipal Court in favor of Auto Site in the amount of $10,102, is affirmed. Costs to be taxed against appellant.

CYNTHIA WESTCOTT RICE, P.J.,

THOMAS R. WRIGHT, J.,

concur.