OPINION
{¶ 1} Appellant, Jeanette Thomas, appeals the Judgment Entry of the Geauga County Court of Common Pleas, Juvenile Division, granting legal custody of her three children to Morton and Juquat Yates. For the following reasons, we affirm the decision of the court below. *Page 2 
 {¶ 2} Jeanette is the mother of three children: Jas'Reonia Thomas, dob 5/16/1997, by Brian Bostick; Shalia Campbell, dob 2/7/2001, by Baxter Campbell; and Jason Yates, Jr., dob 9/18/2002, by Jason Yates, Sr.
 {¶ 3} On August 9, 2006, the Geauga County Department of Job and Family Services filed a Complaint, alleging the children to be neglected, pursuant to R.C. 2151.03(A)(2), and dependent, pursuant to R.C. 2151.04(B) and (C), and seeking protective supervision and/or temporary custody of the children. The Complaint was filed following an incident in which Jason Jr. came to school smelling like marijuana. Jeanette admitted to using marijuana and a drug analysis test indicated Jeanette was using cocaine as well as marijuana.
 {¶ 4} On August 10, 2006, the juvenile court appointed Dorothy Cheeks guardian ad litem for the children.
 {¶ 5} On August 30, 2006, a Case Plan for Jeanette and her children was filed with the court. Jeanette was required to undergo a mental health assessment, a drug and alcohol assessment, and submit to random drug screens.
 {¶ 6} On October 5, 2006, following an adjudication and disposition hearing, the juvenile court found the children to be dependent, as defined in R.C. 2151.04(C), and dismissed the remaining allegations of the Complaint. The court also found it to be in the children's best interest that Geauga Job and Family Services exercise protective supervision over the children. The court modified the Case Plan to require Jeanette to complete parenting classes approved by Job and Family Services.
 {¶ 7} On October 11, 2006, an Amended Case Plan was filed with the court, requiring Jeanette to participate in parenting classes; continue counseling with a licensed *Page 3 
professional; continue drug and alcohol counseling; attend regular AA/NA meetings; and participate in the Help Me Grow program to address Jason, Jr.'s, behavioral issues.
 {¶ 8} On February 12, 2007, a 180-day review hearing was held. Jeanette admitted to failing to comply with the court's order to attend counseling and AA/NA meetings. The court found Jeanette to be in contempt, but allowed her to purge the contempt by following the requirements of the Case Plan.
 {¶ 9} On May 14, 2007, a 270-day review hearing was held. The juvenile court found Jeanette to be in contempt for failing to participate in counseling, to attend AA/NA meetings, and to participate in in-home family counseling. The court determined it to be in the children's best interest that Geauga Job and Family Services be granted temporary custody of the children. Job and Family Services placed the children with Morton and Juquat Yates, the paternal grandparents of Jason, Jr.
 {¶ 10} On August 1, 2007, Jeanette filed a Motion for Custody, seeking the return of her children.
 {¶ 11} On August 7, 2007, following the annual review hearing, the juvenile court denied Jeanette's motion. The court noted Jeanette had made considerable progress in the Case Plan, by regularly attending counseling and AA/NA meetings, having completed parenting classes, and exercising unsupervised visitation with the children. The court noted its concern, however, that Jason, Sr., remained a presence in Jeanette's life but had not made consistent efforts at achieving the goals of his Case Plan. The court recognized that Jeanette's substance abuse and mental health issues were longstanding, and desired additional time for her to demonstrate the permanency of the improvements. The court declared Campell and Thomas to be "abandoned" by their *Page 4 
fathers as defined by Chapter 2151 of the Revised Code, inasmuch as their fathers had shown no demonstrable interest in their children's welfare.
 {¶ 12} On October 23, 2007, Jeanette again filed a Motion for Custody, seeking the return of the children.
 {¶ 13} On November 6, 2007, following a review hearing, the juvenile court found it to be in the children's best interest that their legal custody be returned to Jeanette and so ordered. The court noted that, although Jason, Sr., was not yet in compliance with his Case Plan, Jeanette had achieved the goals of her Plan, had maintained her sobriety, and was demonstrating good parenting skills.
 {¶ 14} On February 19, 2008, following a review hearing, the juvenile court expressed "strong reservations" about Jeanette's fitness to parent her children and its intention to consider granting legal custody of the children to the Yates at the next review hearing. The court found that "many of the past concerns regarding [Jeanette's] ability to care for the children and provide them with a safe and nurturing home have resurfaced." Specifically, the court noted that Jeanette had discontinued counseling for herself and for Jas'Reonia, was unable to document attendance at AA/NA meetings, and has been inconsistent in addressing her children's special education needs. School officials expressed concern with the children's hygiene and Jeanette's lack of participation in their Individualized Education Program (IEP) meetings and other appointments. There was also an incident where Shalia came to school with a black eye, which she claimed Jeanette had caused. Although Shalia was ultimately diagnosed as having a sty, Jeanette failed to follow the recommendations for treating the infected eye. *Page 5 
 {¶ 15} On April 7, 2008, Guardian ad Litem Cheeks filed a report recommending that the children be placed with the Yates. In the report, Cheeks noted that she had not directly asked the children about their placement wishes: "I observe their behavior and expressed emotions in each setting. In the home of their mother, Jeanette, it appears that anxiety prevails. It is obvious that they love their mother and that she loves them. * * * Often they appear unsure of how to respond to their mother's request and there seems to be uncertainty of what they must do. Often it ends in the mother telling one or all of them to go upstairs or the older child to go look after the younger child. In the home of Jason Junior's paternal grandmother * * * there is an ordered day and routines are followed. A calm prevails that lacks anxiety even if some `no's' or limits are expressed."
 {¶ 16} Cheeks also noted that the Yates are Jeanette's principal means of support: "Not only do they help care for the children but they inform her of available food and pick it up for her from the food banks. * * * The Yates family reminds Jeanette of appointments and often, if a family car is available, transport her."
 {¶ 17} On April 11, 2008, a review hearing was held. At the hearing, Rebecca Avram testified on behalf of Geauga Job and Family Services. Avram testified that, although the children "clearly love" Jeanette and Jason, Sr., Jeanette lacks basic parenting skills. She noted there is little structure, in terms of rules and routines, within Jeanette's home. She reported that since Jas'Reonia has been returned to Jeanette's home, she has quit talking at school and has reverted to using gestures to communicate. Jas'Reonia was reported to come to school "unkempt," often wearing the same clothes repeatedly, or smelling of body odor or cigarettes. All three children were recently kept back from school because they had ringworm. *Page 6 
 {¶ 18} Cheeks testified that she had recently learned that Jeanette has epilepsy and suffers from grand mal seizures. Cheeks also reported that Jeanette often fails to take the prescribed medication for her condition, claiming either that she forgets or does not have the money to pay for it. Jeanette testified that, although there was a period of time during which she did not take her medication, she is currently taking it every day.
 {¶ 19} Avram testified that Jeanette is presently taking parenting classes and working with a counselor at Ravenwood Mental Health Center. Jeanette's counselor, Richard Johnson, testified that Jeanette demonstrates symptoms of posttraumatic stress syndrome as the result of "fairly extensive sexual abuse" as an adolescent.
 {¶ 20} Avram testified that Jeanette was presently attending AA/NA meetings. In February 2008, however, Avram found several bottles of vodka and a twelve pack of beer, eight bottles missing, at Jeanette's home. Jeanette provided Avram conflicting explanations for the presence of the alcohol. Jeanette testified that she took the beer and a bottle of vodka from friends of hers for their own safety. She could not account for the presence of the other bottles of vodka.
 {¶ 21} Avram and Cheeks testified that Jason, Jr., has been participating in counseling and that his behavior has improved consistently since the inception of this case in 2006.
 {¶ 22} Avram testified that Jason, Sr., has not been participating in counseling or cooperating with Job and Family Services in complying with the case plan. Jason, Sr., has also admitted to drug use.
 {¶ 23} Based on this evidence, the juvenile court determined it to be in the best interest of the children that legal custody be granted to the Yates. The court stated that *Page 7 
the case has been open for approximately twenty months, during which time the children have made "significant gains" with respect to behavioral issues and school performance. The court observed, however, "the children made their most significant gains while in the temporary custody of the paternal grandparents. * * * Teachers note dramatic differences in the children from when they were in the temporary custody of the paternal grandparents." The court concluded that Jeanette lacks the basic parenting skills to provide appropriate structure and supervision within her home despite the availability of support services.
 {¶ 24} With respect to Jason, Sr., the juvenile court found that he "has made little effort to comply with his objectives in the caseplan. He has not maintained his sobriety and has made little attempt to maintain his sobriety."
 {¶ 25} Jeanette timely appeals and raises the following assignments of error:[1]
 {¶ 26} "[1.] The trial court erred when it did not fully address all of the best interests (sic) factors when making the determination to deny mother's motion for legal custody of the minor children."
 {¶ 27} "[2.] The trial court erred when it did not inquire into the failure of the guardian ad litem to express the children's wishes and determine whether or not a conflict existed between the guardian's recommendations and the children's wishes, requiring the assignment of counsel for the children."
 {¶ 28} "[3.] The trial court's decision in granting legal custody to the paternal grandparents was against the manifest weight of the evidence, contrary to law, and resulted in a manifest injustice." *Page 8 
 {¶ 29} When a child is adjudicated a dependent child, the juvenile court may, as its dispositional order, place the child under the protective supervision or temporary custody of a children services agency, or award legal custody of the child to a third party. R.C. 2151.353(A)(1), (2) and (3); Juv. R. 34(D)(1) and (2); R.C. 2151.415(A)(3). "The court shall retain jurisdiction over any child for whom the court issues an order of disposition pursuant to division (A) of this section * * *." R.C. 2151.353(E)(1); R.C. 2151.417(B). "[T]his provision was intended to ensure that a child's welfare would always be subject to court review. That is, given that a child, by virtue of being before the court pursuant to R.C. Chapter 2151, was at risk of some harm, the General Assembly provided for the child's safety and welfare by ensuring that the juvenile court would retain jurisdiction over the child through the age of majority." In re Young Children,76 Ohio St.3d 632, 637, 1996-Ohio-45.
 {¶ 30} "The court may amend a dispositional order * * * at any time upon its own motion or upon the motion of any interested party. The court shall comply with section 2151.42 of the Revised Code in amending any dispositional order pursuant to this division." R.C. 2151.417(B); R.C. 2151.353(E)(2). "At any hearing in which a court is asked to modify * * * an order of disposition under section 2151.353 * * * of the Revised Code, the court, in determining whether to return the child to the child's parents, shall consider whether it is in the best interest of the child." R.C. 2151.42(A); In re Pryor (1993), 86 Ohio App.3d 327, 332
("the primary, if not only, consideration in the disposition of all children's cases is the best interests and welfare of the child").
 {¶ 31} "Legal custody" is defined as "a legal status that vests in the custodian the right to have physical care and control of the child and to determine where and with *Page 9 
whom the child shall live, and the right and duty to protect, train, and discipline the child and to provide the child with food, shelter, education, and medical care, all subject to any residual parental rights, privileges, and responsibilities." R.C. 2151.011(B)(19). "An order of disposition * * * granting legal custody of a child to a person is intended to be permanent in nature." R.C. 2151.42(B). This court has observed that "legal custody is not as drastic a remedy as permanent custody because a parent retains residual rights and has the opportunity to request the return of the children." In re Memic, 11th Dist. Nos. 2006-L-049, 2006-L-050, and 2006-L-051, 2006-Ohio-6346, at ¶ 24
(citations omitted); In re C.R., 108 Ohio St.3d 369, 2006-Ohio-1191, at paragraph one of the syllabus.
 {¶ 32} A juvenile court's grant of legal custody is reviewed under an abuse of discretion standard. Id. at ¶ 25 (citations omitted); In reRatliff, 171 Ohio App.3d 55, 2007-Ohio-1770, at ¶ 16 (citations omitted).
 {¶ 33} In her first assignment of error, Jeanette argues the trial court erred by "not fully weigh[ing] the significance of the relationship between the minor children and their mother * * * nor their custodial history" and, "most importantly," by granting legal custody without "the necessary information regarding the children's wishes."
 {¶ 34} According to Jeanette, the juvenile court must consider the "best interest" factors contained in R.C. 2151.414(D) when making an award of legal custody: "In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353 [2151.35.3] or division (C) of section 2151.415 [2151.41.5] of the Revised Code, the court shall consider all relevant factors, including, * * * (1) The interaction and interrelationship of the child with *Page 10 
the child's parents * * *; (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; [and] (3) The custodial history of the child * * *." R.C. 2151.414(D). In support of this position, Jeanette relies upon In re R.R., 9th Dist. No. 23641, 2007-Ohio-4808, which states, "the factors contained in R.C. 2151.414(D) may provide guidance to the trial court in making an award of legal custody." Id. at ¶ 12 (citations omitted).
 {¶ 35} A plain reading of R.C. 2151.414(D) demonstrates that it does not apply to the present situation. The factors contained in R.C. 2151.414(D) become operative when the "best interest" of the child is considered within the context of a possible grant of "permanent custody" to a children services agency or a "planned permanent living arrangement" with such an agency. R.C. 2151.353(A)(4) and (5). Consistent with this reading of the statute, the Ninth District inR.R. merely characterized the factors contained in R.C. 2151.414(D) as factors that "may provide guidance." 2007-Ohio-4808, at ¶ 12. Nothing in the R.R. decision suggests that consideration of these factors is mandatory.
 {¶ 36} Jeanette's position is also contradicted by prior decisions of this court, which have held that "[w]hen a court makes a custody determination under R.C. 2151.353, it must do so in accordance with the best interest of the child standard as set forth in R.C. 3109.04."Ratliff, 2007-Ohio-1770, at ¶ 32, citing Memic, 2006-Ohio-6346, at ¶ 26 (citations omitted); In re Poling, 64 Ohio St.3d 211,1992-Ohio-144, at paragraph two of the syllabus ("[w]hen a juvenile court makes a custody determination under R.C. * * * 2151.353, it must do so in accordance with R.C. 3109.04"). "Under this standard, there is no definitive test or set of criteria for the court to apply, rather, a court `should consider *Page 11 
the totality of the circumstances, including, to the extent they are applicable, the best interest factors set forth in R.C. 3109.04.(F)."Memic, 2006-Ohio-6346, at ¶ 26, citing In re Pryor (1993),86 Ohio App.3d 327, 336; In re Mitchell, 11th Dist. Nos. 2002-L-078 and 2002-L-079, 2003-Ohio-4102, at ¶ 14 ("[i]n determining the best interest of the child in a custody proceeding incident to a dependency action, there does not appear to be any definitive test or set of criteria to apply").
 {¶ 37} Nothing in R.C. 3109.04 requires a juvenile court to consider the wishes of the child as expressed by the guardian ad litem, as does R.C. 2151.414(D)(2). Rather, this statute provides that "the court, in its discretion, may * * * interview in chambers any or all of the involved children regarding their wishes and concerns with respect to the allocation [of parental rights and responsibilities]." R.C. 3109.04(B)(1). Accordingly, it is not error for the juvenile court to render a dispositional judgment without first ascertaining the child's wishes.
 {¶ 38} In the present case, there was abundant evidence before the juvenile court regarding Jeanette's relationship with her children and their custodial history. The Guardian ad Litem filed five written reports in the course of these proceedings. Each report contained a section captioned "Wishes of the Children" in which the guardian either reported the children's wishes directly or commented upon the children's interaction with their mother. Caseworker Avram also testified at the final dispositional hearing that the children "clearly love" their mother and being in their mother's home. There was also evidence that Jeanette's interaction with her children was "artificial" and that the children responded positively to the greater order and structure of the Yates' home. The court was also aware of the children's custodial history, and specifically noted *Page 12 
that, in the twenty months during which this case has been pending, the children made their most significant progress in their case plan goals while in the custody of the Yates.
 {¶ 39} In the absence of a statutory mandate that the juvenile court make express findings regarding the children's wishes or otherwise weigh the relevant factors in a particular manner, the children's best interests remain the standard for evaluating the court's award of legal custody to the Yates. In re Fulton, 12th Dist. No. CA2002-09-236,2003-Ohio-5984, at ¶ 11. Jeanette has failed to state grounds regarding the court's consideration of the relevant factors adequate to reverse its decision.
 {¶ 40} The first assignment of error is without merit.
 {¶ 41} In the second assignment of error, Jeanette argues the juvenile court erred by failing to inquire about the wishes of the children for the purpose of determining whether the children were entitled to counsel, if those wishes proved to be contrary to the guardian ad litem's recommendation.
 {¶ 42} "A child * * * is entitled to representation by legal counsel at all stages of the proceedings under this chapter [Chapter 2151. of the Revised Code]. * * * Counsel must be provided for a child not represented by the child's parent, guardian, or custodian. If the interests of two or more such parties conflict, separate counsel shall be provided for each of them." R.C. 2151.352; State ex rel. Asberry v. Payne,82 Ohio St.3d 44, 46, 1998-Ohio-596 ("Ohio, through R.C. 2151.352, provides a statutory right to appointed counsel that goes beyond constitutional requirements").
 {¶ 43} The appointment of counsel is not an automatic occurrence in every juvenile court proceeding. The Ohio Supreme Court has held that "a child who is the subject of a juvenile court proceeding to terminate parental rights is entitled to *Page 13 
independent counsel in certain circumstances." In re Williams,101 Ohio St.3d 398, 2004-Ohio-1500, at syllabus. Courts should make a determination as to whether a child "actually needs independent counsel" on a "case-by-case basis." Id. at ¶ 17. A court is generally required to appoint independent counsel where the child's guardian ad litem also serves as counsel and the guardian's recommendation regarding the child's custody differs from the child's own wishes. Id. at ¶ 18 (citations omitted).
 {¶ 44} The "certain circumstances" in which it has been found necessary to appoint independent counsel are cases in which a motion for permanent custody has been filed or in which there have been allegations of abuse. E.g. In re Allen, 11th Dist. No. 2008-T-0010, 2008-Ohio-3389, at ¶ 10; In re Borntreger, 11th Dist. No. 2001-G-2379, 2002-Ohio-6468, at ¶ 77. Significantly, the present case is neither a permanent custody proceeding nor a case in which abuse has been alleged.
 {¶ 45} Jeanette's argument is premised on Cheeks' failure to determine the children's wishes, thereby precluding the juvenile court from determining whether those wishes were in conflict with her recommendation. As demonstrated under the first assignment of error, however, the court was under no obligation to consider the children's wishes as expressed by the guardian ad litem. Where the children's wishes are not necessary to the best interest determination, it makes no sense to require the children's wishes to be determined solely for the purpose of appointing independent counsel. As Jeanette concedes in her Appellant's Brief, even if the children's wishes were known it may not have been necessary to appoint counsel.
 {¶ 46} Moreover, we repeat that the guardian ad litem filed five reports in which the children's wishes and/or interactions with Jeanette were discussed. In four of these *Page 14 
reports there was no conflict between the children's wishes and the guardian's recommendation, inasmuch as Cheeks recommended that the children remain or be returned to Jeanette's custody. Only in her fifth and final report did Cheeks recommend placement outside of Jeanette's home. The court was aware of the children's love and affection for Jeanette and their desire to live with her from the guardian's report filed at the time of their first removal.
 {¶ 47} In the present circumstances, where the proceeding only involved the grant of legal custody, the court was well-apprised of the children's feelings and no demonstration of prejudice has been made, there was no error in the juvenile court's failure to appoint counsel for the children.[2] In re A.L., 10th Dist. Nos. 07AP-638 and 07AP-647, 2008-Ohio-800, at ¶¶ 53-62 (finding no grounds to reverse a grant of permanent custody despite the failure to appoint counsel for the child where prejudice was not demonstrated); In re Kangas, 11th Dist. No. 2006-A-0010, 2006-Ohio-3433, at ¶ 46 (noting, within the context of a permanent custody proceeding, the court's failure to appoint counsel did not require reversal since the child's "wishes regarding her custody were evidence by the guardian ad litem's report and witness testimony"); In re J.B., 6th Dist. Nos. S-02-018, S-02-019, S-02-020, and S-02-021, 2003-Ohio-3096, at ¶ 12 ("[t]he ultimate issue, however, is whether the violation of the right to counsel resulted in prejudice to the children or the parents").
 {¶ 48} Alternatively, Jeanette's argument in her second assignment of error may be rejected on the grounds that she failed to raise the issue in the court below by *Page 15 
requesting counsel be appointed to represent the children. "[W]here no request was made in the trial court for counsel to be appointed for the children, the issue will not be addressed for the first time on appeal."In re T.E., 9th Dist. No. 22835, 2006-Ohio-254, at ¶ 7 (citations omitted); In re Graham, 4th Dist. No. 01CA57, 2002-Ohio-4411, at ¶¶ 30-33; In re Brittany T., 6th Dist. No. L-01-1369, 2001-Ohio-3099, at ¶ 24.
 {¶ 49} The second assignment of error is without merit.
 {¶ 50} In her third assignment of error, Jeanette maintains the juvenile court's judgment is against the manifest weight of the evidence. The juvenile court determined that granting legal custody to the Yates was in the children's best interest based on the following: the length of time the proceedings have continued (twenty months); the children had made their most significant progress with respect to their behavior and school performance while in the Yates' custody; their teachers expressed concerns about the children's hygiene and school preparedness while in Jeanette's custody; Jeanette's inability to provide structure within her household and to make use of the resources available to her.
 {¶ 51} Jeanette does not challenge these findings. Rather, her argument is based on the erroneous supposition that the juvenile court was bound to consider the best interest factors contained in R.C. 2151.414(D), as though this were a permanent custody proceeding. Thus, Jeanette maintains there was insufficient evidence for the court to make a determination regarding the children's wishes, and the fact that they have been in Jeanette's custody for more than twelve months in a twenty month period does not support the granting of legal custody to the Yates. R.C. 2151.414(D)(2) and (3). Neither of these arguments carry weight. It has been discussed above that the court was not *Page 16 
required to make a specific finding regarding the children's wishes and that there was evidence before the court regarding the children's feelings and interactions with Jeanette. The fact that the children spent more than twelve months out of a twenty month period in their mother's custody simply has little relevance outside of a permanent custody proceeding.
 {¶ 52} Jeanette's final argument is that the evidence of the children's interaction with Jeanette does not support the granting of custody to the Yates. R.C. 2151.414(D)(1). The social worker Avram testified the interaction between Jeanette and the children seemed "very superficial," and the guardian Cheeks noted a sense of anxiety in their interactions. On cross-examination, Avram admitted that the presence of social workers within the home could account for the strained character of the interactions: "I definitely agree with that * * * I mean, it's very nerve wracking having someone in your home."
 {¶ 53} Avram's testimony does not contradict the juvenile court's conclusion regarding the children's best interests. Avram acknowledged the effect that observation may have on Jeanette's interaction with the children but also testified that she took this into account when making her evaluations. Avram's testimony regarding the quality of the interaction is supported by and consistent with the guardian ad litem's own observations contained in her reports. Finally, both Avram and Cheeks agreed that the children's interactions with the Yates was more relaxed as well as more positive than with Jeanette. *Page 17 
 {¶ 54} The juvenile court's determination that a grant of legal custody to the Yates is not against the manifest weight of the evidence. The third assignment of error is without merit.
 {¶ 55} For the foregoing reasons, the decision of the Geauga County Court of Common Pleas, Juvenile Division, granting legal custody of Jeanette's children to the paternal grandparents, is affirmed. Costs to be taxed against appellant.
MARY JANE TRAPP, J., concurs, COLLEEN MARY O'TOOLE, J., dissents.
[1] Jason, Sr. did not file a Notice of Appeal and is not a party to this appeal.
[2] All the citations in this and the following paragraphs are permanent custody proceedings. The paucity of cases involving the children's right to counsel in legal custody proceedings indicates the importance of showing prejudice and/or raising the issue in the court below. *Page 1