[Cite as *In re K.Q.*, 2018-Ohio-906.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| IN THE MATTER OF: | : | **O P I N I O N** |
| K.Q., NEGLECTED CHILD. | | |
| | : | |
| | | **CASE NO. 2017-A-0060** |
| | : | |
| | : | |

Appeal from the Ashtabula County Court of Common Pleas, Juvenile Division, Case No. 16 JC 97.

Judgment: Affirmed.

*April R. Grabman*, *Law Offices of Michelle M. French, LLC, 28 West Jefferson Street, Jefferson, OH 44047* (For Appellant – Kristina Sanders).

*Nicholas A. Iarocci,* Ashtabula County Prosecutor, and *Shelley M. Pratt,* Assistant Prosecutor, Ashtabula County Courthouse, 25 West Jefferson Street, Jefferson, OH 44047; and Margaret A. Draper, Assistant Prosecutor ACCSB, 3914 C Court, Ashtabula, OH 44004 (For Appellee – Ashtabula County Children Services Board).

*Linda Silakoski*, 8 North State Street, Suite 400, Painesville, OH 44077 (Guardian ad litem).

CYNTHIA WESTCOTT RICE, J.

{¶1} Appellant, Kristina Sanders, appeals from the judgment of the Ashtabula County Court of Common Pleas, Juvenile Division, terminating temporary custody and awarding legal custody of her daughter, K.Q., to a third party, Michelle Diemer. At issue is whether the trial court abused its discretion when it entered the foregoing order. We affirm.

{¶2} In April 2016, an abuse complaint was filed in Ashtabula County Juvenile Court by Ashtabula County Children's Services Board ("ACCSB"). A complaint for temporary custody of K.Q. was subsequently filed, which was granted by the trial court. On May 2, 2016, a motion for ex parte placement with a third party, Ms. Diemers, was filed. The motion was granted on June 9, 2016. Prior to granting the motion, the court held a hearing and found K.Q. to be a dependent child and ordered her to remain in the custody of ACCSB. ACCSB later filed a motion to terminate temporary custody and grant legal custody to Ms. Diemers. A hearing was held, at which the following facts were adduced:

{¶3} K.Q., D.O.B. April 29, 2008, is the child of appellant and Ramone Quinones. Appellant is the mother of five children, in total. None of the children are in appellant's care. K.Q. has certain developmental disabilities and is described as a low-functioning, autistic child. Due to concerns regarding appellant's ability to care for K.Q., she surrendered custody of the child to Roy Sanders, appellant's husband from whom she is separated.[1] Mr. Sanders enrolled K.Q. in Happy Hearts School Program, a facility that assists in the academic and occupational education of physically and mentally disabled children, for the 2015-2016 school year. The facility is operated through the Ashtabula County Board of Developmental Disabilities.

{¶4} K.Q. was eight years old at the beginning of the academic year and school officials observed numerous concerns with K.Q.'s intellectual as well as physical condition; to wit: she was non-verbal, had low weight, was unable to feed herself, she drank from a bottle, and lacked toilet training. K.Q. was frequently absent in the fall of 2015 and stopped attending school in November 2015. She resumed school in March

---

1. The date appellant surrendered custody is not clear from the record.

2015; even though the program provided transportation, K.Q. missed a total of 94 days over the academic year. Due to the significant absences as well as the child's physical, occupational, and educational deficits, ACCSB opened a case file for K.Q. And, in April 2016, the abuse complaint was filed in the trial court along with a complaint for temporary custody.[2] On June 9, 2016, K.Q. was ultimately placed with Ms. Deimer, who was her teacher at Happy Hearts.

{¶5} Jada Rosado, ongoing caseworker at ACCSB, commenced working with the family in June 2016 and a case plan was developed for appellant. Pursuant to the plan, appellant was to obtain mental health services, obtain and maintain housing, and maintain an income. At the time of the hearing, appellant had neither obtained nor maintained housing. She had applied and been accepted for housing through the Ashtabula Metropolitan Housing Authority; because, however, appellant claimed she required a three-bedroom home, she remained on a waiting list. Appellant was residing with a family member during the pendency of the proceedings. Moreover, appellant was not working and, while she had obtained a mental health evaluation and services, Ms. Rosado noted her participation was sporadic.

{¶6} Ms. Diemer testified she first met K.Q. in November 2015, when the child was enrolled at Happy Hearts. Ms. Diemer noted K.Q. was initially aggressive with others; she would spit, scratch, head-butt, throw things, and destroy property. The program's director, Patrick Guliano, recommended K.Q. see a doctor concerning her behavior. An appointment was ultimately made in March 2016. K.Q. did not attend school between November 2015 and March 2016.

---

2. At the time the complaint was filed, K.Q. was residing with Mr. Sanders, along with nine other children, including K.Q.'s four siblings, of whom Mr. Sanders had legal custody.

{¶7} While in Ms. Diemer's care, K.Q. developed a relationship with Ms. Diemer's two children. She learned to feed herself, gained weight, and used the toilet independently. K.Q. additionally started speaking, learned to write her name, acknowledge colors, numbers, and recognize various sight words. Ms. Diemer also taught K.Q. to drink from a straw, take baths, and dress herself.

{¶8} Moreover, Ms. Diemer testified K.Q. is getting along with other students and participating in school. According to Ms. Diemer, however, K.Q. does not deal well with change. If an interruption in her routine occurs, she becomes withdrawn and aggressive. And, Ms. Diemer testified, upon returning from visits with appellant, she is visibly upset and does not listen.

{¶9} Mr. Guliano, Director of Happy Hearts, testified that, since K.Q. was placed with Ms. Diemer, she has been absent only four times; moreover, she has mastered her IEP goals. Before being under Ms. Diemer's care, he testified, the program was unable to place K.Q. on an IEP because her deficits were so profound she was "un-scoreable" (i.e., she was incapable of participating in the evaluations necessary to construct an IEP).

{¶10} At the time of the hearing, appellant was living in Conneaut, Ohio. She testified the living arrangement was not permanent. She noted she did not have custody of K.Q. when ACCSB became involved with the child. She recognized her case plan goals and acknowledged she was approved for housing, but was on a waiting list; moreover, she was receiving mental health services, but had transportation issues. Appellant was in the process of purchasing a vehicle, but did not have a valid driver's license or insurance. Appellant asserted she was seeking employment, but was

4

unemployed at the time of the hearing. Appellant conceded she was happy with the progress K.Q. had made while in Ms. Diemer's care.

{¶11} Linette Butts, appellant's case manager, assisted appellant in her attempts to find housing and employment. She provided transportation for appellant to visit her children. According to Ms. Butts, appellant was diligently attempting to resolve her housing and employment issues. Nevertheless, appellant had been seeking housing for nearly a year and had only one part-time, seasonal job (with a tax company) since Ms. Butts was assigned to her case. Ms. Butts also noted appellant had applied for Social Security Disability, but was not yet receiving benefits.

{¶12} After hearing the evidence, the trial court granted legal custody of K.Q. to Ms. Diemer, finding the placement was in the best interest of the child. Appellant now appeals assigning the following error:

{¶13} "The trial court erred by awarding legal custody to a third-party non-relative as such award of legal custody was not in the child's best interest and not based on a preponderance of the evidence and, therefore an abuse of discretion."

{¶14} A juvenile court's judgment granting legal custody is reviewed under an abuse-of-discretion standard. *In re C.R.*, 108 Ohio St.3d 369, 2006-Ohio-1191, ¶25. "Regarding this standard, we recall the term 'abuse of discretion' is one of art, connoting judgment exercised by a court which neither comports with reason, nor the record." *In re L.L.S.*, 11th Dist. Portage No. 2016-P-0068, 2017-Ohio-7450, ¶20.

{¶15} "When a child is adjudicated a dependent child, the juvenile court may, as its dispositional order, place the child under the protective supervision or temporary custody of a children services agency, or award legal custody of the child to a third

5

party." *In re Yates*, 11th Dist. Geauga No. 2008-G-2836, 2008-Ohio-6775, ¶29. "'Legal custody' means a legal status that vests in the custodian the right to have physical care and control of the child and to determine where and with whom the child shall live, and the right and duty to protect, train, and discipline the child and to provide the child with food, shelter, education, and medical care, all subject to any residual parental rights, privileges, and responsibilities." R.C. 2151.011(B)(21). Although legal custody is intended to be permanent in nature, R.C. 2151.42(B), it "is not as drastic a remedy as permanent custody because a parent retains residual rights and has the opportunity to request the return of the children." *In re Memic,* 11th Dist. Lake Nos. 2006-L-049, 2006-L-050, and 2006-L-051, 2006-Ohio-6346, ¶24 (citations omitted); *In re C.R., supra,* at paragraph one of the syllabus.

{¶16} In considering a disposition of legal custody, R.C. 2151.353(A)(3) does not list specific factors a court should consider in deciding what is in the child's best interest. *In re B.P.,* 3rd Dist. Logan No. 8-15-07, 2015-Ohio-5445, ¶20, citing *In re N.P.,* 9th Dist. Summit No. 21707, 2004-Ohio-110, ¶23, citing *In re Fulton,* 12th Dist. Butler No. CA2002-09-236, 2003-Ohio-5984, ¶11. This court has observed, however, "[w]hen a court makes a custody determination under R.C. 2151.353, it must do so in accordance with the best interest of the child standard as set forth in R.C. 3109.04." *Memic*, *supra*, at ¶26; *see also Yates*, *supra*, at ¶36. The trial court made detailed findings under the best interest considerations set forth under R.C. 3109.04(F). We shall therefore consider whether the court's findings and conclusion are reasonable and consistent with the record.

{¶17} Appellant asserts the trial court abused its discretion in placing her in the legal custody of Ms. Diemer because it was in K.Q.'s best interest to remain in the temporary custody of ACCSB. She maintains she opposed the placement because she is working on completing her case plan and, as such, the court should have extended temporary custody towards the end of reunification. Appellant also contends the trial court's decision was unreasonable because it relied upon the guardian ad litem's recommendation that K.Q. be placed with Ms. Diemer. Appellant underscores, however, that the guardian ad litem did not observe appellant and K.Q. interact. Appellant further asserts the court did not give adequate weight to the bond K.Q. had established with appellant as well as her four siblings. Appellant appears to claim that, even though K.Q.'s siblings are in foster care, her best interest will be served if she remains in the custody of ACCSB because there would be a possibility she could actively interact with her full biological family during visits.

{¶18} We first point out appellant cites the best interest factors set forth under R.C. 2151.414(D), which generally pertain to cases where the termination of parental rights is the issue. While courts have noted these factors can be instructive, this court has determined that subsection is inapplicable to legal custody placements under R.C. 2151.353(A)(3). In *Yates*, *supra*, this court observed:

> {¶19} A plain reading of R.C. 2151.414(D) demonstrates that it does not apply to the present situation[, i.e. an award of legal custody]. The factors contained in R.C. 2151.414(D) become operative when the "best interest" of the child is considered within the context of a possible grant of "permanent custody" to a children services agency or a "planned permanent living arrangement" with such an agency. R.C. 2151.353(A)(4) and (5). Consistent with this reading of the statute, the Ninth District * * * [in *In re R.R*, 9th Dist. Summit No. 23641, 2007-Ohio-4808,] merely characterized the factors contained in R.C. 2151.414(D) as factors that "may provide

7

guidance." 2007-Ohio-4808, at ¶12. Nothing in the *R.R.* decision suggests that consideration of these factors is mandatory.

{¶20} [Moreover,] prior decisions of this court * * * have held that "[w]hen a court makes a custody determination under R.C. 2151.353, it must do so in accordance with the best interest of the child standard as set forth in R.C. 3109.04." *In re Ratliff,* [171 Ohio App.3d 55,] 2007–Ohio–1770, at ¶ 32 [(11th Dist.)], citing *Memic,* 2006–Ohio–6346, at ¶ 26 (citations omitted); *In re Poling,* 64 Ohio St.3d 211, 1992-Ohio-144, at paragraph two of the syllabus ("[w]hen a juvenile court makes a custody determination under R.C. * * * 2151.353, it must do so in accordance with R.C. 3109.04"). "Under this standard, there is no definitive test or set of criteria for the court to apply, rather, a court 'should consider the totality of the circumstances, including, to the extent they are applicable, the best interest factors set forth in R.C. 3109.04(F)." *Memic,* 2006–Ohio–6346, at ¶ 26, citing *In re Pryor* (1993), 86 Ohio App.3d 327, 336, 620 N.E.2d 973; *In re Mitchell,* 11th Dist. Nos.2002–L–078 and 2002–L–079, 2003–Ohio–4102, at ¶ 14 ("[i]n determining the best interest of the child in a custody proceeding incident to a dependency action, there does not appear to be any definitive test or set of criteria to apply"). *Yates*, *supra*, at ¶35-36.

{¶21} Because appellant's arguments are framed by reference to R.C. 2151.414(D), they do not directly attack the trial court's analysis. Nevertheless, there is some overlap between that subsection and R.C. 3109.04(F) and, as stated in *Yates*, a court must consider the totality of the circumstances. Accordingly, appellant's use of the R.C. 2151.414(D) factors does not necessarily undermine the substantive points of her arguments.

{¶22} We shall now address appellant's arguments. With respect to appellant's compliance with her case plan, the trial court noted:

{¶23} Although mother's case manager characterized mother's efforts towards her case plan goals as diligent, mother has failed to adequately address these concerns as of the date of the hearing. Mother has not obtained housing, and continued on a waiting list at the time of the hearing despite being on a list for housing for at least several months. Mother testified that she resides * * * in Conneaut, Ohio, but that is not a permanent address. Mother lives

8

in that residence with another family member who provides her with some amount of support.

{¶24} Mother was not working but had sought employment. She has worked seasonal jobs in the past. She testified that she supported herself with disability income and food stamps, but subsequent testimony clarified that her disability application remained pending and mother had received no such benefits as of the date of the hearing in this case.

{¶25} Mother has been addressing her need for transportation by making plans for repairs for a recently purchased vehicle. Mother lacked a valid driver's license, and did not have insurance as of the hearing date.

{¶26} Mother participated in a Signature Health evaluation but her participation with recommended services, including therapy, was sporadic. Mother had future appointments scheduled at the time of the hearing. Mother had a case manager at that time as well, and mother's case manager testified favorably about mother's commitment and ability to parent."

{¶27} The trial court thoroughly considered appellant's efforts to meet her case plan goals. Although appellant's efforts do not directly bear on the child's best interest, they are certainly relevant to whether reunification is reasonably foreseeable and plausibly possible. As the trial court identified, even though there was some evidence to show appellant was making some effort, at the time of the hearing, none of the salient issues had been fully addressed. In this respect, and even though mother vehemently expressed her wish for temporary custody to persist, the trial court made the reasonable determination that K.Q.'s best interest, especially in light of the child's deficits and need for consistency, would not be served by remaining in ACCSB's temporary custody.

{¶28} In any event, the trial court fully considered the nuances of appellant's living situation and her ostensible ability and motivation to stabilize her life as required by the case plan. Given appellant's minimal actual progress, the court could reasonably

9

conclude that keeping K.Q. in the temporary custody of ACCSB was, under the circumstances, contrary to her best interest. In light of the significant advancements K.Q. has experienced in the care of Ms. Diemer, the court did not abuse its discretion in not giving appellant's efforts greater weight.

{¶29} Next, appellant takes issue with the court's reliance on the guardian ad litem's strong recommendation that Ms. Diemer be given legal custody. Appellant asserts this reliance is misplaced because the guardian ad litem failed to observe her interactions with K.Q. In considering the guardian ad litem's recommendation, the court noted K.Q.'s mental and physical condition when ACCSB became involved and K.Q's significant improvement since ACCSB and Ms. Diemer became involved. Even assuming the guardian ad litem did not observe appellant's interaction with K.Q., the court was permitted to consider her recommendation and, in light of the remarkable strides the child has made with Ms. Diemer, we fail to see how the recommendation somehow lacked credibility or was otherwise problematic.

{¶30} Appellant finally asserts the trial court's judgment was contrary to K.Q.'s best interest because it "significantly hinders [her] relationship with her siblings." Even though K.Q. may have been raised with her siblings prior to ACCSB's involvement, there was no evidence presented that her interaction with the siblings was so meaningful or important that her best interests would be undermined by granting Ms. Diemer placement. Indeed, the quality and quantity of K.Q.'s interaction with her immediate family was not explored in any great detail. Moreover, appellant acknowledges that three of K.Q.'s siblings are currently in foster care. As such, even if the agency retained temporary custody, it is unclear how appellant would, or even

could, consistently coordinate interaction with all siblings. We therefore fail to see how K.Q.'s previous interaction with appellant and her siblings militates against the trial court's determination.

{¶31} The trial court fully considered all relevant factors under R.C. 3109.04(F)(1). The court's findings were supported by the evidence received at the hearing and its legal conclusion was, under the totality of the circumstances, eminently reasonable. We therefore hold the trial court did not abuse its discretion in in granting legal custody to Ms. Diemer.

{¶32} Appellant's assignment of error is without merit.

{¶33} For the reasons discussed in this opinion, the judgment of the Ashtabula County Court of Common Pleas, Juvenile Division, is affirmed.


DIANE V. GRENDELL, J.,

TIMOTHY P. CANNON, J.,

concur.

11