[Cite as *In re B.E.V.*, 2019-Ohio-3153.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

IN THE MATTER OF: B.E.V.  :  **O P I N I O N**

:

:  **CASE NO.  2019-L-020**

:


Appeal from the Lake County Court of Common Pleas, Probate Division, Case No. 2010 GU 0085.

Judgments: Affirmed.


*Terri L. Lamb*, pro se, 36938 Stevens Boulevard, Willoughby, OH  44094 (Appellant).

*Cari Dalessio Fonner,* pro se, 29 East Shore Boulevard, Timberlake, OH  44095 (Appellee).


CYNTHIA WESTCOTT RICE, J.

{¶1}    Appellant, Terri L. Lamb, the paternal grandmother of minor child B.E.V. (D.O.B. August 4, 2005), appeals the Lake County Probate Court's decision denying her request to replace her daughter, Cari Dalessio (n.k.a Fonner), as guardian of B.E.V. against guardian's wishes, and the subsequently-denied motion for relief from judgment. For the reasons set forth herein, the judgments of the Lake County Probate Court are affirmed.

{¶2}    When B.E.V. was about one year old, his father was sentenced to, and began serving, a prison term of fifteen years to life.  With his mother's whereabouts unknown, he began residing with his paternal grandmother, Ms. Lamb, who had rights

according to a Caretaker Authorization Affidavit filed with the Lake County Juvenile Court. Following her graduation from college, B.E.V.'s paternal aunt, Ms. Fonner, was appointed guardian on July 21, 2010 for an indefinite period of time. B.E.V. moved in with Ms. Fonner, where he currently resides with her and her husband, Jasen Fonner. B.E.V.'s father is not expected to be released from prison before B.E.V., now 13, reaches the age of majority.

{¶3} Until recently, Ms. Lamb lived in an in-law suite at Ms. Fonner's residence and saw B.E.V. routinely. She has since purchased a home nearby with B.E.V.'s father's girlfriend. On September 20, 2018, Ms. Lamb filed an Application for Appointment of (Successor) Guardian of Minor. Ms. Fonner opposed the change in guardianship and the probate court held a hearing on November 8, 2018, to determine if there was good cause to remove Ms. Fonner as guardian. B.E.V.'s father attended the hearing via phone.

{¶4} At the close of the hearing, the court held an in-camera hearing with B.E.V., in which he apparently expressed no issues with either the Guardian or the Applicant. However, on November 29, 2018, apparently with the help of his school guidance counselor, B.E.V. sent a letter to the court expressing that he was nervous during the in-camera interview and that he wanted to live with his grandmother instead of his aunt.

{¶5} Nevertheless, on December 18, 2018, the court denied Ms. Lamb's Application for Appointment of (Successor) Guardian of Minor, finding no "good cause" to remove Ms. Fonner as guardian. Ms. Lamb filed a motion for relief from judgment, which the court denied on February 5, 2019. Numerous guardian complaints have been filed since, which have been resolved by the court.

{¶6}    Ms. Lamb now appeals the December 18, 2018 and February 5, 2019 judgments.    We review both under an abuse of discretion standard.    *Matter of Guardianship of Rosenberger*, 11th Dist. Lake No. 2017-L-120, 2018-Ohio-3533, ¶13 ("The probate court's decisions in guardianship proceedings are generally reviewed under an abuse of discretion standard."); *In re Guardianship of Brunstetter*, 11th Dist. Trumbull No. 2002-T-0008, 2002-Ohio-6940, ¶12, citing *Griffey v. Rajan*, 33 Ohio St.3d 75 (1987) ("A ruling on a motion for relief from judgment is left to the sound discretion of the trial court. The trial court's decision will not be overturned on appeal absent an abuse of that discretion.").    "The phrase 'abuse of discretion' is one of art, connoting judgment exercised by a court which neither comports with reason nor the record." *In re K.Q.*, 11th Dist. Ashtabula No. 2017-A-0060, 2018-Ohio-906, ¶14.

{¶7}    Ms. Lamb sets forth three assignments of error for our review.    We address her second assignment of error first:

{¶8}    The trial court erred and abused its discretion by failing to determine that habitual drunkenness, drug abuse and child endangerment are sufficient to constitution "good cause" for the requested substitution of guardianship in this case.

{¶9}    Under this assigned error, Ms. Lamb focuses primarily on the actions and record of Mr. Fonner, pointing out he has five DUI convictions in the past 20 years, and asserting that he is a drug addict.    As Ms. Lamb correctly notes in her brief, however, in evaluating whether "good cause" exists for removal, the primary focus is upon the actions of the Guardian.    "[W]hile the effect on the ward is certainly a consideration under the 'good cause' standard, its primary focus is the actions of the guardian." *In re Guardianship of Spangler*, 11th Dist. Geauga Nos. 2007-G-2800, and 2007-G-2802, 2011-Ohio-6686, ¶62.    "Thus, a guardian may be removed when proven to be

3

exercising authority in a manner adverse, antagonistic, or hostile to the best interests of the ward." (Citations omitted.) *Id.*, at ¶51. In this case, Ms. Fonner's actions include allowing Mr. Fonner to continue driving B.E.V. despite his record until the court ordered he no longer drive B.E.V. at all.

{¶10} While Mr. Fonner's history of DUIs is uncontroverted, only one of the traffic records Ms. Lamb presents includes children as passengers; though Ms. Lamb asserts there were other instances in which Mr. Fonner drove B.E.V. while under the influence, no evidence was shown in support. The court, however, resolved this concern by ordering that Mr. Fonner not drive B.E.V. anymore whatsoever, regardless of alcohol consumption. With this issue resolved, we cannot say the court abused its discretion in finding no good cause on these grounds to remove Ms. Fonner as guardian.

{¶11} Ms. Lamb also asserts that Mr. Fonner is a drug addict and that Ms. Fonner drives B.E.V. while she is intoxicated. Ms. Fonner disputes this, however, and no evidence to support either assertion was presented at the hearing or on appeal. The probate court, as trier of fact, had the benefit of hearing the witnesses testify firsthand. "On the trial of a case, either civil or criminal, the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass*, 10 Ohio St.2d 230 (1967). Without more, we cannot say the court abused its discretion in apparently deciding Ms. Fonner's actions were not adverse, antagonistic, or hostile to the best interests of B.E.V.

{¶12} Ms. Lamb's second assignment of error is without merit.

{¶13} Ms. Lamb's first assignment of error states:

4

{¶14} The trial court erred and abused it discretion by its reliance upon erroneous determinations of fact that are contrary to the facts in the record.

{¶15} R.C. 2111.46 governs the guardianship of minors, and states, in pertinent part:

{¶16} When a guardian has been appointed for a minor before the minor is over fourteen years of age, the guardian's power shall continue until the ward arrives at the age of majority, unless removed for good cause or unless the ward selects another suitable guardian. After the selection is made and approved by the probate court and the person selected is appointed and qualified, the powers of the former guardian shall cease.

{¶17} It is well established that "it is within the sound discretion of the trial court to determine whether good cause exists to terminate a guardianship." *In re Termination of Guardianship of Hendrickson*, 152 Ohio App.3d 116, 2003-Ohio-1220, ¶11 (7th Dist.). *See also In Re Henry Arch*, 8th Dist. Cuyahoga No. 45601, 1983 WL 3065, *4 ("The decision as to whether good cause for removal was shown was within the sound discretion of the trial court. It was the trier's responsibility to weigh the evidence and judge the credibility of the witnesses.").

{¶18} Specifically, Ms. Lamb asserts that Ms. Fonner was appointed limited Guardian, not unlimited Guardian for an indefinite period of time as the court stated in its magistrate decision which was adopted in its entirety by the court. Ms. Lamb also disputes that she moved out "due to family disagreements." She states that it has "always been her intention to obtain her own residence and to reinstate her caretaker status of [B.E.V.]." Finally, Ms. Lamb also takes issues with the finding of the court that a "change in guardians may not require a change in schools for the ward." She points to her testimony at the hearing stating unequivocally that no change in schools would be necessary if B.E.V. were to reside with her. Ms. Fonner questioned the veracity of the

5

statement. Ms. Lamb also argues that, in light of the letter B.E.V. wrote to the the court, it erred in finding B.E.V. was "comfortable with both Guardian and Applicant, and has expressed no issues to the Court with either of them." Disagreeing, as she does, with these factual findings, and noting Mr. Fonner's DUI record and Ms. Fonner's purported drinking habits, Ms. Lamb asserts the court erred in finding no good cause existed to remove her as guardian.

{¶19} First, the magistrate's decision, which the court adopted in its entirety, and the court's 2010 judgment entry appointing Ms. Fonner as Guardian does not state whether the appointment was limited or unlimited. However, the Letter of Guardianship signed by the court contemporaneously with the judgment states Ms. Fonner's guardian powers are over the ward's person only and "those guardianship powers, until revoked, are for an indefinite time period." Decidedly, the box indicating limitations on the guardianship powers is left unmarked. Thus, we find no error with the court's finding that Ms. Fonner was appointed unlimited guardian for an indefinite period of time.

{¶20} Furthermore, even assuming that Ms. Lamb moved out without family disputes, and that B.E.V. would decidedly not have to change schools, these point to reasons why Ms. Lamb would be an appropriate guardian. But the standard is not whether another individual would make an appropriate, or even better, guardian. The standard, pursuant to R.C. 2111.46, is whether there is good cause to remove the current guardian.

{¶21} As to the court's finding that B.E.V. was "comfortable with both Guardian and Applicant, and has expressed no issues to the Court with either of them," B.E.V.'s letter to the court does not convince us that this finding is untrue or has changed. B.E.V.'s letter does not express issues with either one, but merely expresses a

6

preference for living with Ms. Lamb. At the hearing, the court talked one on one with B.E.V. in order to ascertain any issues or problems with Ms. Fonner or Ms. Lamb as guardian. He expressed none during the in-camera interview, nor in his subsequent letter. Thus, we do not find that the court abused its discretion.

{¶22} Thus, and in light of our discussion of the Fonner's drinking habits under the second assignment of error, Ms. Lamb's first assignment of error is without merit.

{¶23} Ms. Lamb's third assignment of error states:

{¶24} The trial court erred as a matter of law in failing to vacate the current appointment of guardianship that was issued in direct violation of Lake County Probate Court Rule 66.10(B).

{¶25} Lake County Probate Court Rule 66.10(B) states, in pertinent part:

{¶26} When proceedings for the appointment of a guardian of a minor are presented to this Court, the following shall apply:

{¶27} * * *

{¶28} (B) The Court will not establish a guardianship solely for the purpose of school enrollment.

{¶29} Ms. Lamb asserts that the appointment of Ms. Fonner as guardian was entirely predicated on enrolling B.E.V. in the school district in which Ms. Fonner resided. She asserts that Ms. Fonner was unable to name another reason for Ms. Fonner's appointment instead of Ms. Lamb's appointment. At the hearing, however, Ms. Fonner testified that while the school district was part of the reasoning, they also considered Ms. Lamb's age. From elsewhere in the record, it appears the parties also considered that Ms. Lamb did not have her own residence at the time of the appointment.

{¶30} Moreover, the magistrate's decision appointing Ms. Fonner as Guardian shows the decision to appoint Ms. Fonner was approved by his family, including his father and paternal grandmother. The decision states, in pertinent part, "[t]he family had

7

decided that [Ms. Fonner] would be his guardian and care for him when she finished college. She is now an R.N. employed with the Cleveland Clinic. * * * [Ms. Lamb] is in agreement with her daughter's appointment as guardian." Thus, we do not find the court erred in finding the appointment of Ms. Fonner as guardian was not based solely on school enrollment.

{¶31} Furthermore, we note that vacating an appointment of guardian would not automatically re-establish her as B.E.V.'s caretaker, as she asserts. The Caretaker Authorization Affidavit itself states that caretaker status terminates, inter alia, when the child ceases to live with the grandparent who signed the Affidavit. Thus, it was not the appointment of Ms. Fonner as guardian that terminated Ms. Lamb's caretaker status, but that B.E.V. no longer lived with Ms. Lamb. Even if we were to find the probate court erred in not vacating the appointment of guardian, which we do not, it would not automatically restore Ms. Lamb to caretaker status.

{¶32} Ms. Lamb's third assignment of error is without merit.

{¶33} For the reasons set forth herein, the judgments of the Lake County Probate Court are affirmed.


MATT LYNCH, J.,

MARY JANE TRAPP, J.,

concur.

8