[Cite as *In re P.V.A.*, 2023-Ohio-1622.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## ASHTABULA COUNTY

IN THE MATTER OF:

P.V.A., DEPENDENT CHILD

CASE NO. 2022-A-0097

Civil Appeal from the
Court of Common Pleas,
Juvenile Division

Trial Court No. 2020 JC 00003

**O P I N I O N**

Decided: May 15, 2023
Judgment: Affirmed

*Barbara J. Rogachefsky*, 1653 Merriman Road, Suite 104, Akron, OH 44313 (For Appellant, Richard Van Alphen).

*Rebecca Agardi*, pro se, 393 Kinsmand Road, NE, North Bloomfield, OH, 44450 (Appellee).

*Colleen M. O'Toole*, Ashtabula County Prosecutor, *Christopher R. Fortunato*, Assistant Prosecutor, and *Jessica Fross*, Assistant Prosecutor, 25 West Jefferson Street, Jefferson, OH 44047 (For Appellee, Ashtabula County Children Services Board).

*Carmen M. Hamper*, P.O. Box 2834, Ashtabula, OH 44005 (Guardian Ad Litem).

JOHN J. EKLUND, P.J.

{¶1} Appellant, Father, appeals the judgment of the Ashtabula County Court of Common Pleas, Juvenile Division, which granted legal custody of his daughter P.V.A. (D.O.B. 09/29/2018) to a third party (Appellant's sister).

{¶2} In December 2019, the Ashtabula County Children's Services Board ("ACCSB") received information that P.V.A.'s older sister M.M. had been abused by their

parents. ACCSB assessed the situation and found that emergency removal of the children from the family home was not necessary at that time. On January 13, 2020, upon further abuse concerns for M.M., ACCSB filed a petition seeking temporary custody of both children. ACCSB maintained temporary custody of P.V.A. until ACCSB returned custody to Father and Mother on April 9, 2020. In July 2020, ACCSB obtained emergency temporary custody of P.V.A. following (what testimony describes as) a "road rage incident" involving Father. ACCSB created case plans for Mother and Father. In August 2020, ACCSB placed P.V.A. in temporary custody of Father's sister, Rebecca Agardi. P.V.A. has remained with Ms. Agardi since then.

{¶3} In July 2021, ACCSB moved to modify temporary custody and grant legal custody to a third party (Ms. Agardi). The court held a hearing on ACCSB's motion in November 2021. ACCSB's caseworker (Sarah Branham,) Mother, Ms. Agardi, Father, and the guardian ad litem each testified.

{¶4} Ms. Branham testified that Mother's visits with P.V.A. were not consistent, that Mother often did not appear for visits, and that Mother did not have any contact with P.V.A. between November 2020 and March 2021. Ms. Branham also relayed that when Mother did visit P.V.A., Mother was very engaged and P.V.A. seemed happy during her visits. As to Mother's case plan, Ms. Branham testified that Mother completed parenting classes, but Mother had not provided ACCSB with updated confirmation of continued mental health services. Ms. Branham then testified that her "main concern" was Father's "explosive behavior and anger" and that P.V.A. should not be returned to Mother because Father and Mother still resided together. Ms. Branham told the court that Father's last visits with P.V.A. were in December of 2020, that he had only appeared to three visits

2

total, and that he was eventually removed from the visiting schedule because of his not appearing at visits and also because his "explosive anger" upset P.V.A. during their visits. As to Father's case plan, Ms. Branham testified that he had not completed mental health treatment or anger management classes. Ms. Branham last testified that P.V.A. was doing well with Ms. Agardi and that she would recommend granting legal custody to Ms. Agardi.

{¶5} Mother testified that she had completed her case plan and that she was willing to do anything else needed to have P.V.A. return home. She testified that her and Father were in a loving relationship, that he was a good father and "was very very well with the children," and that she had no concerns about Father's behavior. Mother also testified that she had no concerns with Ms. Agardi's care of P.V.A.

{¶6} Ms. Agardi testified that P.V.A. was doing very well under her care. She relayed to the court that Mother's visits with P.V.A. went "great" and that P.V.A. reacted well to Mother. Ms. Agardi also stated that Father's visits with P.V.A. did not go well and that he spent his second visit "yelling at [P.V.A.] until she ... crying because she was terrified. He was yelling at her because she didn't know what color a cat was in a book she was pretending to read."

{¶7} Father testified that he had a good relationship with P.V.A., that he is a loving father, and that ACCSB misunderstands him because he is emotional. Father stated that he does not need anger management and denied yelling at P.V.A. during his second visit with her. Much of father's testimony included him getting upset and angry with attorneys, often swearing or name-calling. The magistrate warned Father several times to calm down and threatened to find him in contempt.

3

Case No. 2022-A-0097

{¶8} The guardian ad litem testified that: "I have concerns about [Father's] behavior, and [Mother's] I guess excusing of his behavior. They don't really seem to take the concern seriously. And so I am unfortunately afraid that the child will be in danger. So until those issues are resolved I couldn't in good conscience recommend that [P.V.A.] go home. And as far as why I'm recommending that she specifically be in the legal custody of the Agardi's, she's been thriving there."

{¶9} In the magistrate's decision, she recommended granting ACCSB's motion to modify temporary custody and granting legal custody to Ms. Agardi. Father objected to the magistrate's decision. The court overruled the objection and adopted the magistrate's decision.

{¶10} Father timely appeals and raises one assignment of error.

{¶11} Assignment of error: The trial court abused its discretion in granting legal custody to a third party.

{¶12} A juvenile court's grant of legal custody is reviewed under an abuse of discretion standard. *In re Yates*, 11th Dist. Geauga No. 2008-G-2836, 2008-Ohio-6775, ¶ 32. An abuse of discretion may be found when the trial court "applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact." *In re L.L.S.*, 11th Dist. Portage No. 2016-P-0068, 2017-Ohio-7450, ¶ 20, quoting *Thomas v. Cleveland*, 176 Ohio App.3d 401, 2008-Ohio-1720, ¶ 15 (8th Dist.).

{¶13} Unlike termination of parental rights, which requires a finding by clear and convincing evidence that the statutory elements have been met, an award of legal custody to a third party requires a finding by a preponderance of the evidence that the statutory

4

elements have been met. *In re S.A.*, 11th Dist. Trumbull Nos. 2011-T-0098, 2011-T-0099, and 2011-T-0100, 2012-Ohio-2006, ¶ 25.

{¶14} The Supreme Court of Ohio has held that "parents who are suitable persons have a 'paramount' right to the custody of their minor children." (Citations omitted.) *In re Murray*, 52 Ohio St.3d 155, 157 (1990). However, when a child is adjudicated a dependent child, the juvenile court may, as its dispositional order, place the child under the protective supervision or temporary custody of a children services agency, or award legal custody of the child to a third party. R.C. 2151.353(A)(1), (2) and (3); *In re Yates* at ¶ 29.

{¶15} At any hearing in which a court is asked to modify an order of disposition, the court, in determining whether to return the child to the child's parents, shall consider whether it is in the best interest of the child. R.C. 2151.42(A); R.C. 2151.415(B). The main issue considered by the courts is not whether the parent has substantially complied with the case plan, but, rather, whether the parent has substantially remedied the conditions that caused the child's removal. *In re Palladino*, 11th Dist. Geauga No. 2002–G–2445, 2002–Ohio–5606, ¶ 16.

{¶16} "Unlike R.C. 2151.414(D), which sets forth specific factors that the court must consider before terminating parental rights and granting permanent custody, R.C. 2151.353(A)(3) does not independently set forth factors that the court should consider for determining the child's best interests in a request for legal custody." *In re G.M.*, 8th Dist. Cuyahoga No. 95410, 2011-Ohio-4090, ¶ 15. Some appellate decisions suggest that the trial courts apply the best interest factors set forth in R.C. 2151.414(D), the permanent custody statute. *In re S.N.*, 9th Dist. No. 23571, 2007–Ohio–2196, at ¶ 27; *In re Eicher*

5

Case No. 2022-A-0097

*Children*, 1st Dist. Nos. C–080107 and C–080121, 2008–Ohio–2196, ¶ 15; *In re Burnette*, 5th Dist. No.2007CA00076, 2007–Ohio–6269, ¶ 29. Other appellate courts have suggested that the trial court consider the best interests factors set forth in R.C. 3109.04(F), addressing the standard for child custody in a divorce or shared parenting plan. *In re J.O.*, 8th Dist. No. 87626, 2010–Ohio–407, ¶ 11; *In re Fulton*, 12th Dist. No. CA2002–09–236, 2003–Ohio–5984. This court has not adopted any statutory best interest factors when determining the child's best interests in a request for legal custody.

**{¶17}** The differences in the best interest factors are of no great consequence, however, because the different statutes are merely instructive on the question of a child's best interests. *In re Pryor*, 86 Ohio App.3d 327, 335, 620 N.E.2d 973 (4th Dist. 1993). Rules of statutory construction state that it is generally presumed that the General Assembly acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another. *State v. Vanderbilt*, 37 Ohio St. 590, 609 (1882). "By failing to set forth in R.C. 2151.353(A)(3) factors that the court must consider when it had specifically done so in other statutes, we must presume that the legislature did not intend to require the consideration of certain factors as a predicate for granting legal custody." *In re G.M.*, 8th Dist. Cuyahoga No. 95410, 2011-Ohio-4090, ¶ 16.

**{¶18}** In this case, we conclude that the trial court did not abuse its discretion in finding by a preponderance of the evidence that granting legal custody to Ms. Agardi was in P.V.A.'s best interest. Ms. Branham and the guardian ad litem both recommended that legal custody be granted to Ms. Agardi. They both also testified that P.V.A. was "thriving" under Ms. Agardi's care. Ms. Agardi explained that P.V.A. was a very happy child and that she was getting along very well with her cousins and other extended family. Ms.

6

Branham and the guardian ad litem both explained that their main concern was Father's behavior, especially his anger, and that they did not believe P.V.A. was safe returning to live with him. While Mother had completed her case plan and had nice visits with P.V.A., Father had not completed his case plan, made P.V.A. upset when he visited her, and testified that he had no interest in going to anger management classes.

{¶19} Appellant asserts that P.V.A. should be returned home because Mother has completed her case plan and her visits with P.V.A. go very well. However, there was a 5-month period where Mother had no contact with P.V.A. As to Mother's completing her case plan, since the trial court is required to assess the best interests of the child when determining whether to grant a motion for legal custody, it is entirely possible that a parent could complete all of his/her case plan goals and the trial court still appropriately grant legal custody to a third party. *In re Calvert Children*, 9th Dist. Nos. 05–CA–19, 05–CA–20, 2005–Ohio–5653, ¶ 74.

{¶20} Looking to the preponderance of the evidence, the lower court did not abuse its discretion in finding that it was in P.V.A.'s best interest to grant legal custody to Ms. Agardi.

{¶21} Father's assignment of error is without merit.

{¶22} The judgment of the Ashtabula County Court of Common Pleas, Juvenile Division, is affirmed.


MATT LYNCH, J.,

EUGENE A. LUCCI, J.,

concur.

7

Case No. 2022-A-0097